**ATLANTIC CO. v. WALLING, Adm'r of Wage and Hour Division, Dept. of Labor.**

**WALLING, Adm'r of Wage and Hour Division, Dept. of Labor, v. ATLANTIC CO.**

**No. 10337.**

Circuit Court of Appeals, Fifth Circuit.

Nov. 13, 1942.

SIBLEY, Circuit Judge, dissenting in part.

———◆———

Pope F. Brock and Wm. K. Meadow, both of Atlanta, Ga., for Atlantic Co.

Geo. A. Downing, Regional Atty., U. S. Dept. of Labor, of Atlanta, Ga., and Warner W. Gardner, Sol., U. S. Dept. of Labor, Mortimer B. Wolf, Asst. Sol., U. S. Dept. of Labor, and Irving J. Levy, Associate Sol., U. S. Dept. of Labor, all of Washington, D. C., for the Administrator.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Alleging that as to some of its employees, defendant was violating the minimum wage requirement of Sec. 6, the maximum hours provision of Sec. 7, the record keeping provisions of Sec. 11(c) and the provisions of Sec. 15(a), appellee brought this suit, under the authority of Sec. 17 of the Fair Labor Standards Act, 29 U.S.C.A. Sec. 201 et seq., to restrain these violations. The defendant, as to some of the employees dealt with in the complaint, denied that they were engaged in commerce. Admitting as to some that they were so engaged, it denied that there was any violation of the act. There was a full hearing, an opinion[1] and

---

[1] Fleming v. Atlantic Co., 40 F.Supp. 654.

a decree in part for plaintiff and in part for defendant, granting plaintiff an injunction as to certain of the employees whom plaintiff had claimed, and defendant had denied, were within the act, and denying the injunction as to certain of the employees whom defendant had conceded were within the act, but as to whom it claimed and proved that it had paid wages under a contract for base pay equal to, and for overtime in excess of, that provided for in the act. Defendant, not complaining of the decree in respect of the brewery and cold storage employees, has appealed from the decree to the extent, and only to the extent, that it relates to the employees engaged in the manufacture, sale and delivery of ice for the refrigeration of interstate freight shipments by rail and truck. The administrator has cross-appealed in respect of the order denying the injunction as to salaried employees who had signed a written contract[2] of employment, providing for 30¢ base pay for the first forty hours and for more than time and one-half for twenty hours overtime. Only two questions then are for decision here (1) on the main appeal, whether employees of defendant who are engaged in the manufacture, sale and delivery of ice to the railroad, the Fruit Growers Express, and to trucks for refrigeration of interstate freight shipments are covered by the act, and (2) on the cross appeal, whether employees of defendant working for it on the written contracts providing for an agreed pay of 30¢ an hour for forty hours and for more than 45¢ an hour for overtime, are being paid in conformity with, or in violation of, the statute requiring payment for all overtime work at not less than time and one-half of the regular rate of pay.

■■ We think the district judge was right in his answers to both of the questions and that the decree should be affirmed, both on the main and on the cross-appeal. In a thoughtful and carefully worked out opinion, the district judge examined and disposed adversely of the defendant's contention that Congress, in using and defining the term "commerce"[3] in the act, used it in a sense narrower than its full constitutional scope, restricting it in short to goods traded

---

[2] Typical of these is the contract with Shelor:

"Terms of Employment of W. P. Shelor.

"It is agreed that the terms of my employment by Atlantic Company effective this date, are as follows:

"Number of hours to be worked weekly 60 hours.

"Rate of pay:

First 40 hours per week at 30 cents per hour ....................$12.00
20 hours overtime at 52½¢ per hour ........................ 10.50

Total weekly compensation ....$22.50

"I understand that this contract may be terminated by either party on 24 hours notice.

"W. P. Shelor, Employee.

"Accepted:

"Atlantic Company,
"By C. A. Nix, Manager.
"Date: 2/16, 1940."

Other contracts were the same in form and provided the same base pay of 30¢ for 40 hours. They varied only in the total weekly salary and this the overtime rate.

Fred Koon: "Rate of Pay:

First 40 hours per week at 30¢ per hour ............$12.00
20 hours overtime at 55¢ per hour ................... 11.00

Total weekly compensation $23.00"

C. E. Pope: "Rate of Pay:

First 40 hours per week at 30¢ per hour .............$12.00
20 hours overtime at 53¢ per hour .................... 10.60

Total weekly compensation $22.60"

F. L. Stevenson: "Rate of Pay:

First 40 hours per week at 30¢ per hour .............$12.00
20 hours overtime at 53¢ per hour .................... 10.60

Total weekly compensation $22.60"

S. F. Hamby: "Rate of Pay:

First 40 hours per week at 30¢ per hour .............$12.00
20 hours overtime at 77½¢ per hour ................. 15.50

Total weekly compensation $27.50"

Paul H. Bell: "Rate of Pay:

First 40 hours per week at 30¢ per hour .............$12.00
20 hours overtime at 1.13½¢ per hour ................. 22.62

Total weekly compensation $34.62"

[3] Sec. 3(b): "As used in this act, 'Commerce' means trade, commerce, transportation, transmission or communication among the several states or from any state to any place outside thereof."

in in interstate commerce, and not including transportation except as incident to such trade. Said the district judge, with eminent correctness in view of the precise and detailed language of the definition, "As the definition includes restatement of the word being defined, (along with statement of other indices of commercial intercourse), it can only be intended to enlarge the scope and meaning of the word to include such transactions, conditions and relationships as have been heretofore known and acknowledged as constituting commerce in the Constitutional sense. 'Commerce' in the Constitutional sense, embraces not only shipment, but carriers engaged in interstate commerce, and the instrumentalities by which such commerce is carried on." In an equally clear and satisfactory way, the district judge disposed of defendant's second contention that the definition of the word "goods" in Sec. 3(i)[4] of the act excludes the ice here under consideration from "goods for commerce". Assuming, but not deciding, that the "noninclusion" provision merely exempts the ultimate consumer from the penalties of Sec. 15(a) (1) and has no effect to limit the scope of the act as to the producers of the goods, he makes it clear that the construction contended for by defendant would produce the absurd result of making the clause operate retroactively to destroy the character the goods had during their production as "goods for commerce". That the language appellant relies on does not have the effect it contends for, but only the effect of placing a time and circumstance limitation on the application of penalties to those who deal in goods produced for use in commerce, is made clear in the act by the use of the words "after their delivery". The fact of which appellant makes so much, that the ice produced for, and being transported in, interstate commerce has the inherent defect of perishability and is, in the course of its use, consumed, is entirely without effect, we think, upon the proposition that ice is goods, is produced for commerce, and moves in commerce. The same contentions made by appellant here were made and adversely decided in Hamlet Ice Co. v. Fleming, 4 Cir., 127 F.2d 165 (certiorari denied). Other decisions of Circuit Courts of Appeal, in point upon the controlling principle, though not precisely in point on the facts, are Mid-Continent Pipe Line Co. v. Hargrave, 10 Cir., 129 F.2d 655; Enterprise Box Co. v. Fleming, 5 Cir., 125 F.2d 897; Warren-Bradshaw Drilling Co. v. Hall, 5 Cir., 124 F.2d 42; and there are numerous district court decisions to the same effect.

On the cross-appeal, the district judge was right in the view he took that the contracts for a base pay equal to and for overtime pay in excess of that required by the act were valid agreements under, and payment of the salaries provided for in, them, was in compliance with the act. Fleming v. Belo Corp., 5 Cir., 121 F.2d 207; Walling v. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716. The administrator's view that the case is like, and is ruled by, Warren-Bradshaw Drilling Co. v. Hall, 5 Cir., 124 F.2d 42, and Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, will not at all do. In those cases, there was no agreement for a base pay and for overtime under, and in accordance with, the act. There, on the contrary, the employment was conducted in complete disregard of, and upon the view that it was not under, the act. It was only when compensation under the act was sought that the claim was put forward by the employer that he was paying the employees under the act and in accordance with it. We held in the Belo case, and we reaffirmed that holding in the Bradshaw case before the opinion in the Missel case came down, that an employer could not justify, as he tried in the Bradshaw case to do, by the claim that since the total compensation paid was in fact more than the minimum statutory rate and time and one-half for overtime, he had complied with the act. We made it clear in those cases, as the Supreme Court did in the Missel case, that such a claim was unfounded. The Belo case, however, made it equally clear that where there was a definite and fixed agreement that the compensation was being paid under, and in accordance with, the act, and there was an apportionment of it between base pay and overtime, it was to write, and not to construe, the statute, to hold that the parties had not done what they had agreed they were doing, establish a regular weekly rate and a rate for over-

---

4 Section 3(i) reads: "(i) 'Goods means goods (including ships and marine equipment), wares, products, commodities, merchandise or articles or subjects of commerce of any character, or any part of ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."

time of at least one and one-half times that rate. The appellant instructed the managers of its various departments to obtain an agreement under the new contracts or to let the men go, and it is in evidence that the managers frankly advised the employees of their orders to dismiss workers who failed to sign and threatened them with dismissal if they refused to do so. The signing of the contracts under these circumstances created a definite understanding and agreement as to the basis on which further relations would continue and the contracts are binding on the appellant and on all of the employees who signed them. The district judge found, as a fact, and the evidence does not admit of any other findings, "The employees whose signatures are affixed to the employment cards actually signed the same, without the result of fraud or vitiating duress, and without the operation of any device or misrepresentation on the part of the employer. They were persons able to read and understand the language on said cards". The administrator's position seems to be not that the agreements were not made but that the appellant ought not to have required its employees to make them as a condition to remaining in its employ. Whatever may be the correctness of this view from the standpoint of general behavior, we have nothing to do with it here. It is sufficient to say that nothing in the law requires employers to continue to employ, or employees to continue to work, except on terms mutually agreeable to both, and that subject only to compliance with the act, employer and employees were free to make any terms they chose to. The judgment was right. It is affirmed throughout.

SIBLEY, Circuit Judge (dissenting in part).

I disagree only as to the employes making ice, some of which is sold in the state of manufacture to railroads and the Fruit Growers Express to be used in icing refrigerator cars and trucks which transport perishable goods to other states. The persons who ice the cars are engaged in interstate transportation, and thus in commerce, but not those making ice. It seems to me to stretch the statute beyond the intent of Congress to say that a manufacturer is producing "goods for commerce", and is under the Fair Labor Standards Act because transportation agencies, who are transporting other goods in commerce, buy locally some supplies from that manufacturer for

consumption by themselves. The principle at issue applies to everything an interstate carrier by rail or truck uses, or even a passenger automobile, or a pedestrian crossing a state line, to facilitate the journey. Coal, water, oil, gasoline, tires, all are consumed on the journey just as this ice is. The food served in a dining car would fall in the same category. There is hardly any end to it. These transportation agencies are not hauling in interstate commerce the ice or oil or gasoline they consume, but are using them to haul other goods, just as they use their rails or other equipment. When Congress spoke of goods produced for commerce it meant the things which are to be commercially transported, and not the things fortuitously used and consumed in transporting them.