**WALLING, Administrator of Wage and Hour Division, United States Department of Labor, v. EMERY WHOLESALE CORPORATION.**

No. 2409.

District Court, N. D. Georgia, Atlanta Division.

Feb. 24, 1943.

Geo. A. Downing, of Atlanta, Ga., and Irving J. Levy, of Washington, D. C., for plaintiff.

Hirsch, Smith, Kilpatrick, Clay & Cody, of Atlanta, Ga., for defendant.

RUSSELL, District Judge.

1. Defendant is a corporation organized under and existing by virtue of the laws of the State of Georgia, having its principal office and warehouse in Atlanta, Fulton County, Georgia, and began business January 1, 1940. Prior to that time the business in which defendant is now engaged had been carried on as a department of Emery Stores, Inc., which is a corporation doing a retail 5 and 10¢ store business.

2. Upon the incorporation of defendant on January 1, 1940, the warehouse of Emery Stores Company separated from the retail business and the defendant after incorporation began operation as Emery Wholesale Corporation.

3. Defendant is engaged in the wholesale distribution in interstate commerce of certain varieties of merchandise customarily sold by 5, 10 and 25¢ stores. It employs approximately nineteen employees in and about its business in the ordering, purchasing, receiving, unloading, handling, and warehousing, and in the sale, distribution and delivery of such goods at wholesale in interstate commerce.

4. From January 1, 1940, until the week ending August 17, 1940, defendant did not pay its employees minimum wages and overtime compensation as required by Sections 6 and 7 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 206, 207, and did not keep records as required by that act and the regulations issued thereunder.

5. Prior to August 17, 1940, each of the defendant's employees were employed on a straight weekly salary basis. On or about such date, and for the purpose of attempting to bring its operations within the terms of the Fair Labor Standards Act, defendant procured from each of its employees involved a letter signed by each employee

which was prepared by the defendant and addressed to it, stating the terms and basis of employment. Typical of such letters is that of Frank Harrison as follows:

"Emery Wholesale Cor-
poration                    Telephone
                                   No. 7219
    "5–10–25¢ Merchandise
    "1070 Murphy Ave. S. W.
    "Atlanta, Ga.
                        "August 5, 1940.

"Emery Wholesale Corporation,
"Atlanta, Georgia.
"Gentlemen:
    "This is to acknowledge that on and after this date, my employment with the company is on a week-to-week basis, and on the basis of 30 cents per hour for a 40-hour week, and 45 cents per hour (that is, time and a half) for all hours worked each week in excess of forty.

    "You have expressed a desire that I earn in the future not less in any week than have been my average weekly earnings in the recent past, and you have indicated that you may, entirely at your option, in the event that my services are entirely satisfactory to you and I have not worked in any week a sufficient number of hours to earn my past average weekly wage, give me a bonus, gratuitiously, in sufficient amount to make the weekly sum received by me substantially equivalent to my past average weekly earnings.

    "I understand that this indication on your part, as above outlined, is not part of the consideration for my continued employment, and that you are not, under any circumstances, obligated or bound to me for the same. If you see fit at any time to voluntarily on your part give such bonus to me, it will be deeply appreciated, but there is no obligation, legally or morally, on you to do so.

                        "Very truly yours,
                            "Frank Harrison
    "The above agreement is acknowledged and accepted.
                "Emery Wholesale Corporation,
                    "By R. F. Horton"

6. The minimum wages filled in in all of the letters was 30¢ per hour.

7. Procuring the signatures of the employees to the letters, it was made clear to the employees that they "would get the same salary" and that their "regular salary would go on as usual", that "there would be no change in our check, that we would receive the amount that we had been getting all of the time."

8. Upon expression of concern with reference to the voluntary feature of the bonus payment on the employer's part, the employees were assured that despite the letter they would be entitled to the bonus and would receive each week a bonus in a sufficient amount to bring the total compensation up to the regular weekly earnings or salary. Some who were still dissatisfied were told that they had to sign the letter or they would be discharged.

9. With the exception of three employees payments received by each employee after the execution of the letters was the same weekly amount as theretofore received. The three exceptions were employees theretofore being paid less than the minimum of 30¢ per hour and they were thereby raised to 30¢ per hour with time and one-half for overtime.

10. On or about May 26, 1941, a different plan was adopted by the company which was instituted in the form of notice from the company to each employee, typical of which, except for variation in stipulated hourly pay, is the following:

"Emery Wholesale Cor-
poration                    Telephone
                                   Ra. 7219
    "5–10–25¢ Merchandise
    "1070 Murphy Ave. S. W.
        "Atlanta, Ga.

"To Margaret Almand:
    "Effective May 26, 1941 your employment with this company will be on an hourly basis, and your rate of compensation shall be 41¢ per hour for the first forty hours actually worked in any work week, and 62¢ per hour for every hour in excess of forty hours worked in any work week.

    "Since you will probably work irregular hours in most every week and your weekly compensation will vary, we propose to make you a weekly advance of $20.00 against your salary.

    "The weekly advance made to you will be charged to your salary account and against this will be credited your actual earned compensation. It may be that you will be indebted to us from time to time, and in such event we necessarily reserve the right to determine to what extent you

may become indebted to us and for how long any such indebtedness will be carried upon our books.

"We will not permit your salary account to show a credit balance in your favor, and in the event of any such credit balance in your favor the same will be paid to you.

"In making your weekly advance each week you will be informed of your actual earned compensation and of the status of your salary account.

"Of course, if you do not desire a weekly advance as suggested, you may make your desire in this respect known to us and you will receive your actual earned compensation each week in cash or by check.

> "Emery Wholesale Corporation
> "By————————————————"

11. The amount of the stated weekly advance was the regular weekly salary currently being paid and the figures inserted in the blanks were determined by taking the employees' prior week's earnings and dividing into it the expected hours of work, thereby arriving at the figure which would compute approximately the same amount of the weekly compensation covering both statutory and overtime hours.

12. In most cases the debit and credit features of the letter were not enforced and due to the failure of the company to keep and maintain records with reference to this feature of the letter, the amount of the debit or credit cannot be determined as to any employee. No demand was made upon any employee for refund of overpayment.

13. The circumstances surrounding the institution of the second plan were substantially similar to those attendant upon the institution of the first as set forth in paragraph No. 5 above.

14. In two instances employees were permitted to work for a few weeks without having been given an employment letter or the defendant having received such a letter from the employee. In view of the defendant's effort to effect compliance with the statute for its own protection, failure to secure such agreements were due to inadvertence and the condition was corrected prior to the trial.

15. In cases where increase in compensation was received by the employees, the amount of such increase was added to and computed as a part of the bonus referred to in the letter set forth in paragraph 5 above.

16. The employee, Matt Coward, was the manager of the defendant's warehouse, beginning in July, 1941. He had charge of all of the personnel in the warehouse and usually had about ten people working for him. He made recommendations as to the hiring and firing of these employees. He was responsible for laying out the work of the people under him and seeing that this work was done and it was his duty to check up on the work of all of the employees under him. He was responsible for the checking of merchandise orders as they came into the warehouse. During his employment at times his work was largely manual labor, consisting of the building of new shelves in the warehouse and the moving of the merchandise from one shelf to another and re-arranging it. He also filled orders, opened packages, and placed the merchandise onto the shelves and moved it from bins onto the shelves. He also performed duties of making up payrolls and checking orders. He testified that two-thirds of his time was accounted for by manual labor until March, 1942, after which time such work did not take more than twenty-five per cent. of his time and he thereafter continued to perform his duties of checking in merchandise and helping with orders. He served as one of the committee of three employees who checked up all stock and took inventory for the purpose of placing orders. These clerical duties accounted for one-third of his time. The remainder, approximately forty-two per cent., was devoted to supervisory work.

17. The employee, Wilbert B. Owens, was raised to $30 and succeeded Coward when the latter left the company in June, 1942. He did approximately the same work that Coward had been doing as above stated. Approximately one-third of his time was spent in manual labor, one-third in performing duties such as checking in merchandise and serving on the committee of buyers and checking stock and taking inventory for the purpose of making requisitions, and one-third checking the warehouse and seeing that every one was at work and properly distributing their duties.

18. The employee, Mrs. Corrine Cole, "several weeks" before the trial was raised to $30 a week. Before the raise she had been doing ordinary office work. She continued to do the same type of work after the raise except she was told that the company wanted her to take a little more responsibility. She had the duty of dis-

tributing the office work among the girls working in the office and made recommendations to the treasurer as to the hiring and firing of girls, though the ultimate decision as to such matters rested with the treasurer.

19. Subsequent to August, 1940, the defendant has kept records respecting the hours, wages and other working conditions of each of its employees.

20. The defendant evidenced no intention to continue violation of the Fair Labor Standards Act subsequent to August, 1940.

### Conclusions of Law.

■ 1. This Court has jurisdiction of the parties and the subject matter.

■ 2. Under the rulings of the Supreme Court in Walling v. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, and of the Circuit Court of Appeals for the Fifth Circuit in Walling v. Atlantic Company, 131 F.2d 518, the transactions between Emery Wholesale Corporation and its employees constituted compliance with, and are not in violation of, the terms of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., and the employment by the defendant of its employees under such writings does not constitute a violation of such act.

■ 3. The defendant has failed to show that the employees Coward, Owens and Mrs. Cole, were employed in a "bona fide executive capacity", within the terms of regulations issued by the Administrator of the Wage and Hour Division pursuant to the authority of Section 13(a) (1), in that it appears that the hours of work of such employees of the same nature as that performed by non-exempt employees exceeds twenty per cent. of the number of hours worked in the work week by the non-exempt employees under their direction, and on the contrary it appeared that such hours exceed thirty-three and one-third per cent.

■ 4. Any substantial violation of the Fair Labor Standards Act, supra, by the defendant ceased in August, 1940, and there appear no evidence of intention of future violation. Injunction should not issue because of the violation of the Act admitted by the defendant from January 1, 1940, to August, 1940. The defendant having the legality of its employment plan, which it adopted in an effort to meet the requirements of the Fair Labor Standards Act, upheld, should not suffer the penalty of injunction because of two instances of unintentional violation.

■ 5. As each of the employees, Coward, Owens and Mrs. Cole, were, prior to their raise to $30 per week as a result of defendant's opinion that they were non-exempt employees, working under the terms of the agreements referred to in paragraph 2 hereof, and their terms of employment presumably could be readjusted to meet the raised compensation by means of such agreements, the Court does not feel that violation of the Act in this respect alone requires the issuance of an injunction at the present time. Jurisdiction of this cause is retained until such time as the Court is advised whether the defendant has complied with the terms of the statute as to these employees or employees working in similar capacities.

6. Under the rulings above enumerated the plaintiff is not entitled to the injunction sought as to the employees employed and working under the agreements of the types referred to in paragraphs 5 and 10 of the findings of fact entered herewith.

### Discussion.

■ In the original decision of this Court in the case of Fleming v. Atlantic Company, as appears from its opinion in D.C., 40 F.Supp. 654, 663, "IV Validity of the employment cards," the conclusion was reached that any agreement for employment which did not set forth a bona fide rate of compensation for the statutory hours and which merely allocated the weekly wage to the statutory hours and overtime hours, would not effect compliance with the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., it appearing that only upon this basis could any arrangement be effected which would comply with the provisions of both Section 6 and Section 7. However, as further appears from the printed opinion in Fleming v. Atlantic Company, supra, the Circuit Court of Appeals in Fleming v. Belo Corporation, 5 Cir., 121 F.2d 207, established the law to be otherwise, and upon motion for rehearing the original decision of this Court was changed to conform to applicable law as thus announced. The Belo case, supra, was subsequently affirmed by the Supreme Court, and it appears from the dissenting opinion therein that each of the reasons which impelled the original finding of this Court, though more exhaustively and ably ex-

pressed, were presented, but nevertheless not accepted by the majority. Furthermore the decision of this Court as changed by its interpretation of the ruling in the Belo case has been affirmed. Atlantic Company v. Walling, 5 Cir., 131 F.2d 518. As I interpret the present state of the law, an agreement which is legal without regard to the terms of the Fair Labor Standards Act, supra, and which provides rates of pay not below those therein required, is not prohibited by, and is valid under, that statute.

As stated with reference to ·the similar question in the opinion in Walling v. Belo Corporation, supra, "the problem presented by this case is difficult—difficult because we are asked to provide a rigid definition of 'regular rates' when Congress has failed to provide one." In view of my interpretation of the law as now established, the plaintiff has failed to show the illegality ·of the agreements now involved.

A proposed judgment carrying into effect the conclusions of law above announced may be presented after notice.