**BELL et al. v. PORTER et al.**

No. 9134.

Circuit Court of Appeals, Seventh Circuit.

Dec. 10, 1946.

Writ of Certiorari Denied April 7, 1947.

See 67 S.Ct. 1092.

John T. Chadwell, Richard M. Keck and Howell B. Hardy, all of Chicago, Ill. (Snyder, Chadwell & Fagerburg, of Chicago, Ill., of counsel), for appellants.

John P. Haley, of Joliet, Ill., Edwin A. Halligan, and Samuel M. Lanoff, both of Chicago, Ill., for appellee.

William S. Tyson, Sol., and Morton Liftin, Asst. Sol., both of Washington, D.C., Kenneth P. Montgomery, Regional Atty., of Chicago, Ill., George M. Szabad, Frederick U. Reel and Eugene Green, Attys., U.S. Dept. of Labor, all of Washington, D.C., amici curiæ.

Before KERNER and MINTON, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

In this appeal 53 employees and former employees of Sanderson and Porter, a co-partnership, sued to recover for overtime, liquidated damages, and attorneys' fees, under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The case was tried by the court without a jury. The court, after making findings of fact and conclusions thereon, entered judgment in favor of plaintiffs-appellees totalling $276,619.16, including therein the sum of $27,600 as fees for plaintiffs' attorneys. 66 F.Supp. 49.

On this appeal, the questions raised are whether plaintiffs-appellees were engaged in the production of goods for commerce, and whether the employees' sleeping time under the two-platoon system was compensable under the Act.

We shall discuss first the question whether appellees were engaged in the production of goods for commerce. As a necessary prerequisite to an understanding of the case, we state the facts insofar as they relate to the point raised.

■ Appellants operated the Elwood Ordnance plant at Elwood, Illinois, where they were engaged in the manufacture of shells, explosives, and munitions for the armed forces, under a cost-plus-fixed-fee contract with the United States Government. This plant, including all buildings, machinery and equipment, was owned by the Government, but all of it was maintained and operated by appellants as independent contractors. The Government procured, owned and furnished appellants all powder and other component parts used in the manufacture of the munitions. Appellants, however, as consignees, procured and received certain other materials and supplies used in the assembling and loading of the munitions from various consignors without the State of Illinois. Title to these supplies vested in the Government at the time of delivery. All munitions produced at the plant were shipped from the plant to various army installations throughout the United States upon orders received by the Commanding Officer from the War Department in Washington, D. C. Appellants had complete supervision of all employees, including the hiring and discharging of all employees, and maintained their own fire department in which appellees were employed as fire fighters. Upon these facts the court concluded that appellees were engaged in the production of goods for commerce within the meaning of the Act.

In support of their contention appellants argue that Government-owned goods shipped by the Government across state lines is an administrative act of the sovereign and is not interstate commerce, and that the word "commerce" as used in the Fair Labor Standards Act is limited to "commercial or business commerce."

On the first point raised it will be enough to say that cost-plus-fixed-fee contractors with the Government engaged in war production, are not agents of the Government and do not share the Government's sovereign immunities. Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615; Curry v. United States, 314 U.S. 14, 62 S.Ct. 48, 86 L.Ed. 9. And it has been held that the production of goods for interstate transportation by or for the Government is production for commerce within the meaning of the Act.[1]

■ As to the second point, we note that the Act is made applicable to any employee "who is engaged in commerce or in the production of goods for commerce." Section 7 (a), 29 U.S.C.A. § 207(a). By § 3(b) of the Act, commerce is defined as "trade, commerce, transportation * * *

[1] Umthun v. Day & Zimmermann, 235 Iowa 293, 16 N.W.2d 258; Timberlake v. Day & Zimmerman, D.C., 49 F.Supp. 28; Clyde v. Broderick, 10 Cir., 144 F.2d 348, 351.

from any State to any place outside thereof." But nowhere in the Act is it suggested that Congress intended that transportation effected by the Government or of Government goods be treated differently from all other transportation; hence we believe, as the court did in the case of Atlantic Co. v. Walling, 5 Cir., 131 F.2d 518, that when Congress defined "commerce" in the Act, it intended to give the term the broadest possible meaning, so as to include all transactions, conditions and relationships as have been heretofore known and acknowledged as constituting commerce in the constitutional sense.

■ The Constitution confers upon Congress the power to regulate commerce among the several States. U.S.Const. Art. 1, § 8, cl. 3. This power to regulate commerce is not confined to commercial or business transactions. From an early date such commerce has been held to include the transportation of persons and property no less than the purchase, sale, and exchange of commodities, United States v. Hill, 248 U.S. 420, 423, 39 S.Ct. 143, 63 L. Ed. 337, and goods may move in commerce though they never enter the field of commercial competition. For example, the movement of people across State lines and the unrestricted ranging of cattle across the boundary between two States is commerce. The interstate transportation of whiskey for personal consumption, of a woman from one State to another for an immoral purpose without any element of commerce, of a kidnapped person or a stolen automobile—all constitute interstate commerce in the constitutional sense.[2] These cases, we think, make it clear that interstate commerce is not limited to interstate trade.

We now consider whether the employees' eight-hour sleeping time was compensable working time under the Act.

Appellees' duties were to fight fires, scrub the premises, drill, make inspection and trial runs, pick up and deliver reports, fill extinguishers, attend school after supper, and clean equipment. These duties ordinarily took about five hours per day of their time, the remainder of the time between 7:30 a.m. and 11:30 p.m. being spent in playing cards, reading, listening to radio programs, eating, and other personal activities. They were permitted to retire at 10 p.m. except that one fireman in each station was required to remain awake until 11:30 p.m. During the period in question, appellees spent 338,265 hours at the plant, of which 229,545 were hours worked between 7:30 a.m. and 11:30 p.m., for which they were paid at overtime rates for hours worked in excess of 40 hours per week. The remaining 108,720 hours were sleeping period hours between 11:30 p.m. and 7:30 a.m., for which no compensation was paid.

The court found that the two-platoon system was proposed to the men in December, 1943, at which time they voted unanimously in favor of the plan; that the plan was put into effect on February 27, 1944, and continued in effect until December 1, 1945; that under the plan, on the first day of a work week, one platoon reported for duty at 7:30 a.m. and remained on the premises until 7:30 a.m. the following day, at which time they were relieved by the other platoon; that on alternate days each platoon was on the premises for 24 consecutive hours followed by 24 consecutive hours off duty; that appellants furnished the men in each station sleeping facilities, bedding, clothes lockers, showers, toilet facilities and laundry service for bedding; that if the men had been free to sleep elsewhere, they would not have chosen sleeping quarters similar to those furnished by appellants; and that under the three-shift system 108 men were necessary at a weekly wage of $44.20, while under the two-platoon system but 68 men were necessary, the average weekly wage of each man being $54.40, and that thereby

2 United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440; Walling v. Haile Gold Mines, 4 Cir., 136 F.2d 102; Edwards v. California, 314 U.S. 160, 62 S. Ct. 164, 86 L.Ed. 119; Thornton v. United States, 271 U.S. 414, 46 S.Ct. 585, 70 L.Ed. 1013; United States v. Hill, supra; Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168; Gooch v. United States, 297 U.S. 124, 56 S.Ct. 395, 80 L.Ed. 522; Brooks v. United States, 267 U.S. 432, 45 S.Ct. 345, 69 L.Ed. 699, 37 A.L.R. 1407.

a saving in manpower and money accrued to appellants.

The court also found that during the period in question there were six occasions on which the sleeping periods òf the firemen were interrupted by fire alarms, three occasions when certain of the men were required to remain during a portion of their sleeping period at the scene of a fire which had occurred prior to 11:30 p.m., and one occasion on which two of the men were detailed for a portion of their sleeping period to stand by at the scene of hazardous operations. The total number of hours spent by all appellees on such night duty amounted to 136 out of a total of 108,-720 sleeping period hours. Four of the appellees were never called out for such duty and the remainder spent from 30 minutes to 8 hours on such duty.

The court concluded that the time spent by appellees at the plant during the period between 11:30 p.m. and 7:30 a.m. was predominantly for appellants' benefits as an incident of their employment and as the only practical means for getting instant service in case of fire, and that the eight-hour period between 11:30 p.m. and 7:30 a.m. constituted working time.

Appellees argue that the sleeping quarters were uncomfortable and unsanitary. They make the point that whether in a concrete case sleeping time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial court, Skidmore v. Swift & Co., 323 U.S. 134, 136, 65 S.Ct. 161, 89 L.Ed. 124, and since the court found that if the men had been free to sleep elsewhere, they would not have chosen quarters similar to those furnished, the findings may not be disturbed.

■ In this case, as in the Bowers v. Remington Rand case, 7 Cir., 159 F.2d 114 appellees rely principally on Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118, and Skidmore v. Swift & Co., supra. In the Armour case the court had no occasion to pass upon the question of whether "sleeping time" was "working time." True, the Swift case involved the question of whether the firemen were entitled to be paid for waiting, but the case was reversed because of the application of an erroneous principle of law. They also cite the case of Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 1194, in which the court said: "the statutory workweek includes all time during which an employee is necessarily * * * on duty or at a prescribed work place * * *." This case involved time spent in walking upon the employer's premises after punching a time clock and time spent in preparatory work. We do not think these cases are controlling and decisive of our case. They are cited because of the quoted language used in the Anderson case and certain statements of the court in the Armour and Swift cases, but the words of "opinions are to be read in the light of the facts of the case under discussion." Armour & Co. v. Wantock, supra, 323 U.S. 133, 65 S.Ct. 165, 168, 89 L.Ed. 118.

■■ The court in the instant case did not find that the sleeping quarters were inadequate or of such a character that the men were unable to obtain normal rest. But be that as it may, the ultimate finding was clearly a mixed question of fact and law, United States v. Anderson, 7 Cir., 108 F.2d 475, and if based upon a misapplication of the law, it is not binding upon the reviewing court. Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755. Here, under the facts and circumstances, as in the Bowers v. Remington Rand case, it is clear that appellees, in consideration of their employment as firemen, were willing to sleep on the premises and to keep themselves available for duty if called upon during their rest period; their contract was to wait to be engaged; hence the time spent in sleeping is not compensable.

The judgment is reversed and the cause is remanded to the District Court with instructions to dismiss the complaint.

Reversed and remanded.