**KENNEDY et al. v. SILAS MASON CO.**

No. 11976.

Circuit Court of Appeals, Fifth Circuit.

Dec. 12, 1947.

Rehearing Denied Jan. 15, 1948.

HUTCHESON, Circuit Judge, dissenting.

L. L. Lockard and Turner B. Morgan, both of Shreveport, La., for appellants.

Charles D. Egan and Sidney M. Cook, both of Shreveport, La., for appellee.

Earl Street, Regional Director, Wage & Hour Div., Dept. of Labor, of Dallas, Tex., amicus curiae for appellants.

Before SIBLEY, HUTCHESON, HOLMES, McCORD, WALLER, and LEE, Circuit Judges.

McCORD, Circuit Judge.

Silas Mason Company during the late war constructed and operated an ordnance plant at Shreveport, Louisiana, under the terms of a "cost-plus-a-fixed-fee" contract with the United States Government. Plaintiffs sued for overtime, penalites, and attorney's fees, which they claim to be due from the Mason Company under the Fair Labor Standards Act of June 25, 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 203, alleging that they had been employed in interstate commerce and in the production of goods for commerce within the meaning of Title 29 U.S.C.A. § 203.

The Mason Company moved for a summary judgment, on the ground that the plaintiffs were not covered by the Fair Labor Standards Act, in that neither plaintiffs nor defendant were "engaged in commerce", or in the "production of goods for commerce", within the meaning of the Act. This motion was supported by the affidavit of the Vice President of defendant, to which was attached the contract under consideration. The affidavit in support of the motion for summary judgment sets forth the undisputed facts of the case.

The United States was engaged in a war which challenged the very life of the Nation. The defendant was called in and entered into a contract with the Government to construct for it an ordnance plant at Shreveport, Louisiana; and when such plant was erected, to manufacture munitions of war for the Government. The Government owned the land upon which the ordnance plant was built; it owned the plant; it owned the equipment and the materials which went into the manufacture of the munitions; and when such munitions were finished and ready for use, they were stored in plants and buildings which belonged to the Government, or went immediately to the firing line to be there used by the troops. These munitions never at any time went into or became a part of commerce as defined by the Fair Labor Standards Act. They were not manufactured for sale, nor were they ever intended or used for commercial purposes. The Mason Company had no interest, financial or otherwise, in the shipment, destination, or delivery of these munitions. It sold nothing in interstate commerce; it delivered nothing in interstate commerce; and it shipped nothing except as an agent or instrumentality for the loading of munitions which already belonged to the United States.

Had the defendant been engaged under its contract in the business of manufacturing munitions of war, either as a general proposition, or under contract by which it agreed to produce and sell to the Government, either at fixed prices, or at prices to be fixed from time to time, then we are of opinion that it would come within the Fair Labor Standards Act. This is not the case here. When viewed in the light of the powers reserved to the Government under this "cost-plus-a-fixed-fee" contract it becomes manifest that the Mason Company was not an independent contractor. The Government at all times supervised both the erection of the plant and the manufacture of the munitions.[1]

We are of opinion that transportation by the Government of Government owned munitions during war for use by its armed forces is not "commerce" within the meaning of the Fair Labor Standards Act. Divins v. Hazeltine Electronics Corp., 2 Cir., 163 F.2d 100; Barksdale v. Ford, Bacon & Davis, Inc., D.C., 70 F.Supp. 690; Lynch v. Embry-Riddle Co., D.C., 63 F.Supp. 992.

The decisions cited by plaintiffs are not in conflict with our conclusion here. Bell v. Porter, 7 Cir., 159 F.2d 117, contains language favorable to plaintiffs, but, for aught that appears, in that case the appellants were independent contractors, with power to employ and discharge their employees without let or hindrance. Our

---

[1] " * * * Performance of the construction work of the entire project will be under the supervision of the Contracting Officer appointed by the Quartermaster General * * * The Contracting Officer may require the Contractor to dismiss from the work any employee the Contracting Officer deems incompetent or whose retention is deemed to be not in the public interest * * * The Government reserves the right to pay directly to the persons concerned all sums due from the Contractor for labor, materials, or other charges * * * "

case of Atlantic Co. v. Walling, 5 Cir., 131· F.2d 518, 521, holds that the Congress in defining "commerce" intended to give to the term the broadest possible meaning, so as "to include such transactions, conditions and relationships as have been heretofore known and acknowledged as constituting commerce in the Constitutional sense." It nowhere holds, or tends to hold, that the transportation during war of Government owned munitions is "commerce" under the Fair Labor Standards Act.

While we have shown that the plaintiffs may not recover under the Fair Labor Standards Act, they are further precluded from recovery for the reason that the contract was entered into by the War Department and the defendant under the authority of the Act of July 2, 1940, Public No. 703, 54 Stat. 712, entitled "An Act to expedite the strengthening of the National Defense," and both defendant and its employees are governed by the provisions of this Act.[2]

The appellants were working directly under the supervision and control of the Government. Therefore, under section 4 (b) of the Act of July 2, 1940, under which they were employed and working,[3] they are precluded from claiming overtime compensation under the Fair Labor Standards Act.

Furthermore, if the defendant was an agent or instrumentality of the United States for the production only of munitions of war, whose employees were paid with funds of the United States, whose hiring and firing had to be with the approval of the United States, who worked in a building belonging to the United States, on materials supplied by and belonging to the United States, and who turned out a product that at all times belonged to the United States, which was delivered without any trade or commerce or transportation occurring; then, under subparagraph (d) of Sec. 3, 29 U.S.C.A. § 203(d), whereby the United States is excluded from the operation of the Act, the Act would not be applicable.

On the other hand, if the defendant was not an agency or instrumentality of the United States, and if the munitions were articles of commerce within the contemplation of the Act, and if the United States was not the producer of the munitions, and if the subparagraph (d) of Sec. 3 of the Act, excluding the United States from its operation, is not applicable; then there would seem to be no escape from the conclusion that since the finished products and all their ingredients are the property of the United States and delivered to it as the ultimate consumer of the goods, the Act, under subparagraph (i) of Sec. 3, would still be inapplicable because the term "goods" "does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof, other than a producer, manufacturer, or processor thereof." Since the Government is the ultimate consumer, and since the goods were delivered into its actual physical possession as ultimate consumer, any movement of the goods thereafter by the ultimate consumer over state lines would not relate back and take the goods out of the exception of subparagraph (i) of Sec. 3 of the Act. Divins v. Hazeltine Electronics Corp., 2 Cir., 163 F.2d 100.

These employees were put in the munition factories by governmental command on the theory that they were an integral part of the war machine—not because they were

---

[2] "  *  *  * This contract is authorized by the following laws: The Act of July 2, 1940, Public No. 703, 76th Congress, [54 Stat. 712], the Act of March [11], 1941, Public No. 11, 77th Congress [22 U.S.C.A. § 411 et seq.], and the Act of June 30, 1941, Public No. 139, 77th Congress [55 Stat. 366]  *  *  *."

[3] "  *  *  * Notwithstanding the provisions of any other law, the regular working hours of laborers and mechanics employed by the War Department, who are engaged in the manufacture or production of military equipment, munitions, or supplies shall be eight hours per day or forty hours per week during the period of any national emergency declared by the President to exist: Provided, That under such regulations as the Secretary of War may prescribe, such hours may be exceeded, but compensation for employment in excess of forty hours in any workweek, computed at a rate not less than one and one-half times the regular rate, shall be paid to such laborers and mechanics.  *  *  *" 5 U.S.C.A. § 189a.

an essential part of interstate commerce. We are unwilling, by judicial fiat, to fasten shackles on the nation's feet as it marches to war, nor otherwise to hinder the Government in the exercise of the sovereign function of providing for the common defense unless we are convinced beyond doubt that the commands of Congress inexorably require it.

We find no reversible error in the record and the judgment is therefore affirmed.

SIBLEY, Circuit Judge (concurring).

I concur in the judgment of affirmance. If a private corporation had furnished the factory, all tools, and materials, agreed to pay all costs of production plus a fixed fee for goods produced, and exercised the control that the government did in this case, I would have no trouble in holding that the operation was that of the private corporation, and that the contractor was not an independent contractor. As in the case of St. Johns River Shipbuilding Co. v. Adams, 5 Cir., 164 F.2d 1012, I would prefer to pass over the question of independent contractor, to the question of whether commerce was involved. All the overtime sued for here was earned, if at all, during 1944 and 1945, when the war effort was at its peak, and munitions were produced for immediate use, and under the greatest pressure. I do not think that the government would have committed the business folly of making cost-plus contracts otherwise. As is shown by several Acts passed during the emergency period relating to wages and overtime, all of which deny double damages and attorneys fees where time and a half pay for overtime is provided for, as well as by the retrospective Portal-to-Portal Act, 29 U.S.C.A. § 251 et seq. the United States did not contemplate becoming the penalized person through cost-plus contracts. While haste was foremost, and cost secondary, I think it clear that no one concerned thought that the work was work in commerce or in producing goods for commerce, or would fall under the peace time Fair Labor Standards Act. Certainly "substandard wages" did not prevail in these public war projects. If the Constitution had vested the war power in the federal government, and

left the regulation of Commerce to the States, so that an Act like the Fair Labor Standards Act had been enacted by the States, no one would contend that the war power was circumscribed by the States' commercial legislation. That is because war is not commerce. This case deals with war and not commerce.

HUTCHESON, Circuit Judge (dissenting).

I am wholly unable to see how our holding, that appellants, the employees of the Silas Mason Company, were within the coverage of the Fair Labor Standards Act, could possibly be "by judicial fiat, to fasten shackles on the nation's feet while it marches to war, nor otherwise to hinder the Government in the exercise of the sovereign function of providing for the common defense." Standing solitary and alone among my brethren, I hereby disclaim for my brief dissent any purpose to do so.

As I read and understand the Fair Labor Standards Act, it was not enacted to, it does not, fasten shackles on the feet of any. Rather it was enacted to strike from the feet of those who toil the shackles of substandard wages. Sec. 203—Definitions —described "employer" and "employee," "commerce" and "goods" in the widest terms. It does, indeed, exclude from the definition of "employer" the United States, the states or political subdivisions of the states. But there is nothing in it which excludes from the definition "employer" independent contractors producing goods under contract with the United States. Because of its fundamentally remedial purpose and the broad language it uses, the act should be, it generally has been, construed to give the widest coverage its language will permit.

A study of the record in this case leaves me in no doubt: that the appellants were not employees of the United States; that, on the contrary, they were employees of an independent contractor working under contract with the United States; that the munitions they were producing were "goods" within the definition of goods as used in the act; and that, unless it can be said that these goods were not being "pro-

1020

duced for commerce" within the act's definitions, appellants cannot justly be denied the coverage they seek.

As the act defines it, " 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof." 29 U.S.C.A. § 203(b). I ask upon what permissible theory can it be claimed that appellants are not covered here, when it is conceded that had they been working for a private plant which made munitions for sale and delivery to the United States for war, they would have been. The munitions in both cases would be for purposes of war and not of ordinary trade, but in both cases they would have been produced for transportation from a state to a place outside thereof.

If the United States, as the employer, had manufactured these munitions, certainly appellants would have no standing to invoke the Fair Labor Standards Act, for the very definition of employer excludes the United States. Here the whole elaborate system was designed and operated so that the United States should not be the employer. This being so beyond question, I find myself wholly unable to agree that employees of Silas Mason Company are not under the act merely because instead of producing ships and clothes and uniforms for use of the armed forces, they were producing munitions.

The briefs of the parties and the briefs filed amicus curiae by the Administrator of the Wage and Hour Division have brought forward and discussed all of the applicable decisions. It will advantage no one for me to pile Pelion upon Ossa in further citing and discussing them. It will be sufficient for me to say that I find myself in complete agreement with the views expressed in Bell v. Porter, 7 Cir., 159 F.2d 117, and that nothing in this case has caused me to withdraw in the slightest from the pronouncements in the opinion of this court in Atlantic Company v. Walling, 5 Cir., 131 F.2d 518. Standing then not wrapped in the solitude of my own originality but on the solid ground those opinions afford, I can see no reason for isolating appellants from the general mass of employees in war plants and, because they

produced munitions, excluding them from the benefits and protection of the Fair Labor Standards Act. I think the judgment should be reversed. I respectfully dissent from its affirmance.