## KANTAR v. GARCHELL.

### No. 12989.

Circuit Court of Appeals, Eighth Circuit.

June 7, 1945.

M. E. Culhane, of Minneapolis, Minn. (Samuel Dolf, of Minneapolis, Minn., on the brief), for appellant.

Arthur T. Nelson and F. Gordon Wright, both of Minneapolis, Minn., for appellee.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

The plaintiff brought this action under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., to recover from his employer for wages and overtime compensation claimed to be unpaid for a period of his employment from October 26, 1940 to February 19, 1942, and for damages and attorney fee as provided in the Act. The employer denied that the plaintiff was an employee engaged in commerce within the Act, and that any of his wages and overtime compensation remained unpaid during

the period of employment, and also counter-claimed for $619.16 for advances made to plaintiff. The trial was to the court without a jury and resulted in judgment in favor of the plaintiff in the sum of $1,147.50 for his overtime compensation, plus liquidated damages in the sum of $1,147.50 "as provided by law", plus attorney fee in the sum of $200, and against the defendant on the counter-claim, which was dismissed. The defendant appeals and contends that the court erred in denying his motion made at the conclusion of all the evidence, to dismiss for insufficiency of the evidence to establish a cause of action under the Act.

The trial court made findings in general terms that the defendant and the plaintiff were respectively engaged and employed in interstate commerce and were subject to and within the provisions of the Fair Labor Standards Act during the period involved in the suit, but such general findings were in effect conclusions of law, and on this appeal it is necessary for this court to consider the testimony and its sufficiency to support the conclusions.

All of the testimony covering the character of the defendant's business and the plaintiff's employment is before us in the record. It appears that defendant is, and for many years has been engaged in, buying and selling meat, poultry and provisions, maintaining his place of business in Minneapolis. He generally employed from six to ten men in the business and the plaintiff was so employed from 1927 until the date of his discharge in February, 1942. During the period involved about 94% of defendant's meats and supplies were bought from the local branches of the packing companies which maintain packing houses and cold storage plants in Minnesota and were delivered to the defendant's place of business out of the stocks on hand in their local cold storage plants. In some instances some, and in other instances all of such cold storage stocks had been processed outside of the State of Minnesota and placed in cold storage in Minnesota to be sold as and when purchasers were found. Such cold storage stocks were replenished from time to time from meats processed in Minnesota or processed outside of Minnesota and shipped into Minnesota, or partly processed both outside and inside the state. In no instance were such meats shipped into Minnesota because of any order or orders such packing houses had received from defendant. All such purchases were delivered to defendant's place of business by the sellers.

As to the small percentage of meats and supplies purchased from packing houses located outside of Minnesota and not having branches or cold storage plants of their own in Minnesota, it appears that the sales were made to defendant upon orders given to local sales agents, and that the orders were filled from stocks processed outside of Minnesota and shipped into Minnesota and placed in cold storage in Minnesota for sale as and when purchasers were found. All of such purchases were delivered from the places of storage to defendant's place of business by the seller.

Defendant's sales were largely to local hotels and restaurants and to the M. St. P. & S. Ste. M. Ry. Co. Commissary in Minneapolis, and amounted to about $90,000 in 1940; $250,000 in 1941, and $350,000 in 1942. We find no substantial evidence in the record that any sales were made to persons outside the state of Minnesota.

The plaintiff's job included receiving, checking and placing in the cooler the meats which were delivered during the early morning hours at defendant's place of business. He then went into the cooler and cut and prepared the meats for the customers, which required several hours daily. During the balance of his time plaintiff assisted in loading defendant's delivery wagons for deliveries to the customers and assisted in the work at the plant. He is skilled in meat cutting and though not proficient in reading, writing or arithmetic, he took some orders for meats and supplies from customers and filled, checked and helped load them for delivery.

It was contended for the plaintiff that the movement from the points of origin to the defendant's customers of the substantial part of defendant's meats which was processed outside the state ought to be considered as continuous, and that by reason of his contribution to such movement, he was employed in commerce in respect to that part of the meats. Also that the plaintiff's work in receiving, processing and loading such meats constituted engaging in commerce on his part.

But the contention fails to take into account that substantially all of the meats and supplies handled in defendant's business came to rest in the State of Minnesota, and were purchased and delivered to him out of stocks that were part of the

mass of property in the state, and were sold to and bought by him solely for local sale and he sold them locally. The meats were not shipped into the state for the defendant or any specific person but to become part of stocks held for local sale as and when purchasers were found. Accordingly, it must be held that the business of defendant as it was carried on, was not an employment in interstate commerce. The work of the plaintiff upon which his right to recover under the Act is dependent (Noonan v. Fruco Const. Co., 8 Cir., 140 F.2d 633) was likewise not engaging in commerce within the Act. He had to do only with goods which were at rest within the state which he helped to process and get delivered to local customers, and no substantial part of the time he worked was devoted to any movement of goods in commerce.

We find the decision of the Supreme Court in Higgins v. Carr Bros., 317 U.S. 572, 63 S.Ct. 337, 338, 87 L.Ed. 468, conclusive against the plaintiff's right to recover in this case. There, as here, the action was by an employee against his employer for recovery of wages and overtime compensation under the Act. It there appeared that the employer carried on a wholesale fruit, grocery and produce business in Portland, Maine, and its sales and deliveries were solely to retailers in Maine. "It buys its merchandise from local producers and from dealers in other states, has it delivered by truck and rail, unloaded into its store and warehouse and from there sells and distributes it to the retail trade. While some of the produce and fruit is processed, much of it is sold in the condition in which it is received. The corporation owns all of its merchandise and makes its own deliveries. It makes no sales on commission nor on order with shipments direct from the dealer or producer to the retail purchaser." Higgins' employment involved work as night shipper, putting up orders and loading trucks for delivery to dealers in Maine or driving a truck distributing merchandise to the local trade.

On those facts the Supreme Court found no error in the judgment of the state court holding that Higgins was not engaged in Commerce within § 6(a) and § 7(a) of the Act. It pointed out that the Act does not extend to business "affecting commerce" and covers only employees "engaged in commerce or in the production of goods for commerce." It seems clear that the employer in this case is even further removed from employment in commerce than the employer was in the case cited. There goods purchased in the course of the business were shipped to the employer in interstate commerce, but in the present case they were not. This employer bought his supplies out of stocks in local warehouses and was not employed in interstate commerce. It is therefore concluded that the trial court erred in denying the motion to dismiss the plaintiff's action, made by the defendant at the conclusion of all the evidence.

The defendant's counter-claim did not present a controversy of federal cognizance in that it was simply a claim for money had and received, and there was no diversity of citizenship or sufficient amount involved. If the plaintiff's action had been dismissed, as we hold it should have been on defendant's motion, the want of federal jurisdiction would be obvious. The adjudication, therefore, upon the counter-claim was upon a controversy cognizable only in the State court and must be set aside for want of jurisdiction in the federal court.

Reversed, with direction to dismiss.