DIVINS et al. v. HAZELTINE ELECTRON-
ICS CORPORATION et al.

No. 205, Docket No. 20506.

Circuit Court of Appeals, Second Circuit.

June 9, 1947.

Joseph G. Telchin, for appellants.

Cahill, Gordon, Zachry & Reindel, (Mathias F. Correa and William L. Dennis, of counsel), for appellees.

William S. Tyson, Sol., Bessie Margolin, Asst. Sol., John A. Hughes, Regional Atty., Morton Liftin, Helen Grundstein, and Frederick U. Reel, Attys., U. S. Department of Labor, for the Administrator of the Wage and Hour Division, United States Department of Labor, amicus curiae.

Before SWAN, CHASE, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is an action brought by the plaintiffs on behalf of themselves and all other similarly situated employees of the defendants to recover overtime compensation, liquidated damages and attorney's fees under the Fair Labor Standards Act of 1938, for services performed between January 1, 1942 and December 31, 1945. Before answering, the defendants moved under Rule 56(b) Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for summary judgment on the ground that the undisputed facts showed that the plaintiffs were not within the coverage of the Act. This motion, heard on the complaint and supporting and opposing affidavits, was granted. From the ensuing judgment of dismissal, the plaintiffs have appealed.

The questions presented by the appeal are whether the plaintiffs, in performing the work for which they claim overtime compensation, were "engaged in commerce or in the production of goods for commerce," within the meaning of section 7 of the Act, 29 U.S.C.A. § 207. The district judge held that they were not within either category, and in so ruling erred, they contend, as to each. In support of their contentions the Administrator of the Wage and Hour Division of the Department of Labor has filed a brief as amicus curiae. In referring to the contentions of the appellants we shall not differentiate between the arguments advanced on behalf of the plaintiffs and those presented by the amicus.[1]

The following facts appear without substantial disagreement. The defendants contracted with the United States Navy Department to recruit and train "field engineers" and to supply specified "man months" of "technical professional services" of such engineers, who were to be "subject to the direction of the Department." In performance of such contracts the defendants employed the plaintiffs, paying them $65 a week while in training and from $75 to $85 a week thereafter. On completion of the training period the services of the plaintiffs were placed at the disposal of the Navy Department. Under direction of naval officers they worked at naval bases and private shipyards in several states. Their work consisted of installing, servicing and maintaining radar and radio equipment on various types of ships. Most of the work was performed on shipboard but some was done in workshops at shipyards or naval bases. A small part of the equipment worked upon had been manufactured by the defendants; most of it was the product of other manufacturers.[2] All of the equipment belonged to the United

---

[1] Nor need we differentiate between the defendants. During part of the period covered by the claims, both plaintiffs were employed by Hazeltine Electronics Corporation; but in December 1944 plaintiff Martoccia terminated that employment and entered the employ of the other defendant. However, the character of the work performed for either employer was the same.

[2] The defendants manufactured radio, radar, electronic and other equipment at their plants in the state of New York and substantially all their completed products were shipped outside the state. The plaintiffs, however, had nothing to do with the manufacture or shipment of such products. It is immaterial that the defendants were engaged in interstate commerce or producing goods for commerce because decision whether the plaintiffs were within the coverage of the Act depends not upon the nature of their employer's business but upon the character of their own activities. Overstreet v. North Shore Corp., 318 U.S.

States and had been delivered into its actual physical possession prior to the time when the plaintiffs did any work upon it. Divins' affidavit states that the "types of ships" on which he installed, serviced and maintained radar and other equipment were "auxiliary mine sweepers, armed cargo transports, armed water distillery ships, armed floating work ships, PT boats, PC boats, SC boats, destroyers, a light cruiser, a submarine, etc., etc." Martoccia adds to this list "heavy cruisers, aircraft carriers, battleships, destroyer escorts, armed transports, etc., etc." Some of these ships were in process of construction and uncompleted when the plaintiffs worked aboard them; others, after being commissioned, had seen service and had returned for repairs, refitting and modernization, including the installation of new types of radar equipment. Some of the vessels had been turned over by the United States to various of its allies.

■ The appellants contend that whether or not work done in connection with the construction of new vessels which have never put to sea constitutes engagement in commerce, it is beyond question that workmen who maintain, service, repair and improve completed ships which have seen service, are "engaged in commerce" within the meaning of the Fair Labor Standards Act. This would be indubitable if these were ordinary ships engaged in commercial pursuits. Such vessels would be instrumentalities of commerce, and employees of a private contractor who repair, maintain or improve such instrumentalities would certainly be held to be "engaged in commerce." See Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; J. F. Fitzgerald Const. Co. v. Pedersen Co., 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316; Boutell v. Walling, 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786; Slover v. Wathen, 4 Cir., 140 F.2d 258; Skidmore v. John J. Casale, Inc., 2 Cir., 160 F.2d 527. But most of the vessels on the repair or servic-

ing of whose equipment the plaintiffs did their work were war vessels operated by the United States or by allied nations in the prosecution of the war. In any realistic use of words such vessels would seem to be instrumentalities of war, not of commerce. It is true that warships transport men, munitions, food for crew and troops, and occasionally, perhaps, supplies for civilians; and they may at times transmit radio messages for civilians. See Ritch v. Puget Sound Bridge & Dredging Co., 9 Cir., 156 F.2d 334, 335. This literally satisfies the statutory definition of commerce,[3] but such transportation or communication is merely incidental to the war purpose for which the vessel is actually being used. To hold that workmen who repair aircraft carriers, battleships, submarines or other types of vessels used as weapons of war are "engaged in commerce," stretches the quoted words, elastic though they be, beyond all reasonable limits. The test, as stated in McLeod v. Threlkeld, 319 U.S. 491, 497, 69 S.Ct. 1248, 1251, 87 L.Ed. 1538, "is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it." The district judge was of opinion that the plaintiffs' activities were too remotely related to the movement of commerce to be a part of it.

■■ We agree with this conclusion in so far as it applies to the work of repairing equipment on vessels of war. We disagree with it in respect to the work of repairing equipment on vessels which may properly be considered instrumentalities of commerce, such as "armed cargo transports" and "armed transports."[4] Such vessels, we think, may be regarded as engaged in commerce, even though the goods or persons they transport will be devoted to the war effort after arrival at destination.

The defendants urge that even if the vessels were engaged in commerce, the ap-

___

125, 132, 63 S.Ct. 494, 87 L.Ed. 656; Skidmore v. John J. Casale, Inc., 2 Cir., 160 F.2d 527.

[3] 29 U.S.C.A. § 203(b): "'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof."

[4] Evidence at the trial may show that "armed water distillery ships" and "armed floating work ships" should also be regarded as instrumentalities of commerce; on the present record we know nothing about them except what is suggested by the names.

pellants were not because the equipment upon which they worked had nothing to do with the movement of the vessels in which it was installed. The record does not disclose the function of the radar equipment; but whether it was to be used in aid of navigation or solely as a defensive or offensive weapon of war we do not believe important. A Pullman railroad car is clearly an instrumentality of commerce, and anyone who repairs such a car in preparation for its next interstate journey is, in our opinion, engaged in commerce within the meaning of the Fair Labor Standards Act, regardless of the exact nature of his work. That is to say, a workman who repaints the car, or repairs the electrical equipment which enables a passenger to summon the porter, would be within the coverage of the Act no less than one who repairs a broken axle. Similarly, in the case of a vessel, if it be an instrumentality of commerce, the men employed in making repairs deemed necessary for its next voyage are "engaged in commerce" whether their work pertains to the hull or to equipment and without regard to whether the equipment is essential to the movement of the vessel. Moreover, part of the appellants' work involved servicing radio equipment. Such equipment is obviously used as an aid to navigation. Consequently, with respect to some of the repair work which the appellants performed, we think that they were "engaged in commerce" and that it was error to grant the motion for summary judgment dismissing their complaint.

■ Under the authorities it is necessary that "a substantial part" of the employee's work must be related to interstate commerce. Walling v. Jacksonville Paper Co., 317 U.S. 564, 572, 63 S.Ct. 332, 87 L.Ed. 460; Skidmore v. John J. Casale, Inc., 2 Cir., 160 F.2d 527. The present record does not disclose the amount of repair work done on vessels which may properly be regarded as instrumentalities of commerce. Whether it was a substantial part of the appellants' activities will be one of the issues to be proved upon the trial.

■ The appellants also contend that the district court erred in holding that they were not "engaged in the production of goods for commerce." As this question may again arise upon the trial, it seems desirable to consider it. The statutory definitions of "goods" and of "produced" are set forth in the margin.[5] Since "goods" include ships and marine equipment, the appellants argue that the installation of radar and radio equipment on new vessels in process of construction constituted "the production of goods for commerce" within the meaning of the Act. With respect to installations on ships which can properly be regarded as instrumentalities of commerce, we believe the argument sound, but we think it fallacious with respect to installations on vessels which are solely instruments of war. The same considerations which support the view that the appellants were not engaged in commerce in repairing equipment on war vessels lead to the conclusion that "ships" was not intended to embrace vessels of this type.[6] We therefore agree with the district judge that the appellants were not within the coverage of the Act when installing equipment on war vessels.

■ The statutory definition excludes "goods" (marine equipment in the case at bar) "after their delivery into the actual physical possession of the ultimate consu-

[5] 29 U.S.C.A. § 203(i): " 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."

29 U.S.C.A. § 203(j): " 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

[6] A houseboat designed to be moored to the bank of an intrastate lake might be called a "ship" within the broadest meaning of the word, but we think it clear that employees who constructed the houseboat would not be within the coverage of the Act; they do not produce goods for commerce.

104

mer thereof other than a producer, manufacturer, or processor thereof." Much of the argument has revolved about two questions: (1) Whether the United States, which had actual physical possession of the equipment upon which the plaintiffs worked, was the ultimate consumer thereof, and (2) whether the United States was a producer, manufacturer, or processor thereof. The first question was answered in the affirmative, the latter in the negative. The plaintiffs protest that the purpose of the exclusory clause was to protect from the penalties of § 215(a) (1) persons who might innocently deal with goods that had been produced in violation of the Act, and that the clause should receive no broader interpretation. Several cases have intimated that this was the primary purpose of the clause. Chapman v. Home Ice Co., 6 Cir., 136 F.2d 353, 355, certiorari denied 320 U.S. 761, 64 S.Ct. 72, 88 L.Ed. 454; Hamlet Ice Co. v. Fleming, 4 Cir., 127 F.2d 165, 171, certiorari denied 317 U.S. 634, 63 S. Ct. 29, 87 L.Ed. 511; Gordon v. Paducah Ice Mfg. Co., D.C.W.D.Ky., 41 F.Supp. 980, 986. But we find nothing in these cases or in the legislative history to indicate that this was the sole purpose or that the statutory definition of "goods" is not to be given effect in determining the coverage of the Act. When goods are delivered to the ultimate consumer they are withdrawn from commerce and from the coverage of the Act unless the ultimate consumer is himself a producer, manufacturer or processor of them. For example, if a person purchases an electric refrigerator for use in his home, he is the ultimate consumer thereof from the moment of its delivery to him. Although the refrigerator is useless until installed in his house, he does not by installing it become a producer, manufacturer or processor thereof; and if he employs an independent contractor to install it, the contractor's employees are not engaged in the production of goods for commerce. If, however, the article purchased is designed for use in commerce as, for example, tires for an interstate bus, the workmen who install the tires are, we believe, producing goods, i.e., a bus, for interstate commerce. The United States was the ultimate consumer of the equipment on which the plain-

tiffs worked, and since the warships on which the equipment was installed were not instruments of commerce, the United States was not a producer, manufacturer or processor of the equipment in causing work to be done upon it. See Lynch v. Embry-Riddle Co., D.C.S.D.Fla., 63 F.Supp. 992. An opposite result, however, is required with respect to installation of equipment on ships in process of construction which were instruments of commerce, such as armed cargo transports.

For the reasons above stated we think that the complaint was erroneously dismissed on motion for a summary judgment. Judgment reversed and cause remanded for further proceedings in conformity herewith.