PHILIP TINYES, Suing on Behalf of Himself and Others, Respondent, v. J. RICH STEERS, INC., et al., Appellants.

DANTE AMBROSIANO, Suing on Behalf of Himself and Others, Respondent, v. J. RICH STEERS, INC., et al., Appellants.

Supreme Court, Appellate Term, Second Department, June 27, 1947.

*J. Vincent Keogh, United States Attorney* (*Eli Resnikoff* and *Mario Pittoni* of counsel), for appellants.

*David Krause* for respondents.

MEMORANDUM *Per Curiam.* Separate actions were instituted by two groups of employees to recover alleged overtime compensation, liquidated damages and counsel fees under the Fair Labor Standards Act of 1938 (U. S. Code, tit. 29, § 201 *et seq.*). At the times in question the various plaintiffs were employed by defendants as " steam " and " land " watchmen in connection with the construction of two shipbuilding dry docks, piers and other related work in and about the New York Naval Ship-

yard at Brooklyn, pursuant to a Government "cost-plus" contract.

Admittedly, plaintiffs were not engaged in the production of goods. Their activities were confined principally to the protection of their employers' undertaking. The "steam" watchmen were required, among other things, to place warning lamps and signals on various work boats used in the project; to watch tie-in lines of boats and to adjust same with the flow and ebb of the tide; and to siphon out dangerous amounts of water which accumulated in such boats. Included among the duties of the "land" watchmen were such tasks as placing warning lamps and signals at various cross streets where the building operation was conducted and on docks, piers, boats and railroad tracks; to control and direct traffic at the crossroads upon the approach of railroad trains within the shipyard proper and at both ends of a suspension bridge when it was elevated to permit boats to pass through; to place lamps and signals upon extension piers, and to guard and adjust mooring lines of tremie boats (from which concrete was poured) and divers' scows.

The burden was upon the plaintiffs to establish that they were engaged "in commerce" within the meaning of the act. (*Warren-Bradshaw Drilling Co.* v. *Hall*, 317 U. S. 88.) The term "commerce", as used therein, is defined to mean "* * * trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof." (Act, § 3, subd. [b]; U. S. Code, tit. 29, § 203, subd. [b].) The test to be applied "is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it. * * * It is not important whether the employer * * * is engaged in interstate commerce. It is the work of the employee which is decisive." (*McLeod* v. *Threkeld*, 319 U. S. 491, 497.) Activities which may "remotely *affect* interstate commerce" are not included within the scope of the phrase "in commerce". (*Stoike* v. *First National Bank*, 290 N. Y. 195, 202; see, also, *Hewlett* v. *Del Balso Construction Corp.*, 180 Misc. 81, motion for leave to appeal to Appellate Division denied 266 App. Div. 922.)

In our view the plaintiffs failed to sustain the burden of proof. While their activities might indirectly affect commerce in the sense that they tended to lessen the likelihood of interference with river traffic which might possibly result if work boats were to capsize or break free of their moorings or if

they did not display proper anchor lights between sunset and sunrise, such activities did not bring the " steam " watchmen into the stream of interstate traffic. Nor were they so closely or intimately related to such traffic as to be a part of it. The incidental and purely negative effect upon river traffic which might have resulted from the proper discharge of their duties was not related to interstate commerce. We do not believe that an employee engaged in such purely local activities is entitled to the benefits of the act.

The foregoing views are equally applicable to the " land " watchmen. The streets and bridge over which they controlled traffic were part of the work project and when the work was completed they were incorporated into the Navy Yard. These watchmen were not engaged in the repair or maintenance of an instrumentality of interstate commerce. (*Hewlett* v. *Del Balso Construction Corp., supra.*)

Accordingly, we conclude that the plaintiffs were not engaged in commerce and, therefore, did not come within the coverage of the Fair Labor Standards Act of 1938.

The order should be reversed, with $10 costs, and the complaints dismissed, with appropriate costs in the court below.

MacCrate, Steinbrink and Rubenstein, JJ., concur.

Order reversed, etc.