## JOSHUA HENDY CORPORATION v. MILLS.

## MILLS v. JOSHUA HENDY CORPORATION.

### No. 11794.

United States Court of Appeals Ninth Circuit.

Sept. 15, 1948.

As Amended on Denial of Rehearing Oct. 11, 1948.

Further Rehearing Denied Oct. 15, 1948.

Thelen, Marrin, Johnson & Bridges, Samuel S. Gill and Robert H. Sanders, all of Los Angeles, Cal., for appellant Joshua Hendy Corporation.

Mohr & Borstein and Perry Bertram, both of Los Angeles, Cal., for appellant Louise E. Mills, etc.

Brobeck, Phleger & Harrison, Moses Lasky and Marion B. Plant, all of San Francisco, Cal., for Waterfront Employers Ass'n and San Francisco Employers' Council, amici curiae.

William S. Tyson, Sol., Bessie Margolin, Asst. Sol., Frederick U. Reel, and Irving M. Herman, Attys., U. S. Dept. of Labor, all of Washington, D. C., Herman Marx, Regional Atty., of San Francisco, Cal., for Administrator of Wage & Hour Div., U. S. Dept. of Labor, amicus curiae.

Green, Landye & Peterson and B. A. Green, all of Portland, Ore., for T. C. Potter, amicus curiae.

Before GARRECHT, MATHEWS and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellee is the former wife and the present administratrix of the estate of Thomas C. Mills, deceased. Thomas C. Mills was, for a time, during his lifetime, employed by appellant as an engineer. During that employment he worked the day shift, also the graveyard shift. While working the day shift he was on duty 8½ hours. On the graveyard 7½ hours was the shift time. Mills was paid for 8 hours time on the day shift, leaving one-half hour each day for which he received no compensation. On the graveyard shift he was paid 8 hours compensation for 7½ hours work. The work week was fixed by contract at 40 hours, Monday through Friday, overtime for Saturday work, double time for Sundays and holidays. The administratrix brought this action under § 16(b) of the Fair Labor Standards Act, 29 U.S.C.A. § 201, et seq., for overtime pay for one-half hour each day which she claimed should have been allotted to Mills as a lunch period, he having been required to perform his usual services during all of the time he was on shift. The boilers he attended required continuous surveillance. He was not furnished a relief man during the lunch period because, to do so, would have been impracticable. Mills carried his lunch and ate it at a desk from which position he could watch the boilers and make timely adjustments which might be needed at any moment and his eating would be interrupted from time to time as the situation required.

The complaint alleges: "From the week ending October 6, 1943, until March, 1945, said Thomas C. Mills was employed by defendant at an hourly rate of $1.53, and from March, 1945, until his death August 28, 1945, was employed at an hourly rate of $1.74. In substantially all of said weeks said Thomas C. Mills was credited with having worked forty-eight (48) hours, for forty (40) hours of which he was paid at straight time and for eight (8) hours of which he was paid at time and one-half. In addition to said forty-eight hours for which he was credited and paid, he worked three (3) hours each week for which he received no credit or compensation." From April 24, 1944 to August 28, 1945, Mills worked on the graveyard shift. From October 17, 1943, to April 23, 1944, he worked on the day shift.

During the period from April 24, 1944, to August 28, 1945, (graveyard shifts) Mills worked 45 hours each week, seven and one-half hours each day for six days. The Saturday shift was treated as overtime and compensated for at the rate of time and one-half for eight hours. The remaining five days were treated as straight time and compensated for at a rate of eight hours for 7½ hours work. From this it appears that Mills received for his 45 hours work in each week on the graveyard shift pay for 40 hours straight time and 8 hours overtime, or, compensation in each week of 2½ hours of straight time for which he did no work and was not on the job, and ½ hour overtime for which he did no work and was not on the job. Appellant should not be required to *again* compensate for work not performed. It seems apparent the provisions of the Fair Labor Standards Act can have *no* application insofar as the graveyard shifts are concerned.

The day shift work presents a different situation. Mills actually worked three hours each week for which he received no compensation. He worked 51 hours, received 40 hours straight time pay and 8 hours overtime pay.

Under the terms of the Fair Labor Standards Act Mills was entitled to compensation at straight time for the first 40 hours worked and time and one-half for the remaining 11 hours. Appellant contends that it is relieved from any liability to Mills for claims accruing under the Fair Labor Standards Act by reason of the application of § 2 of the Portal-to-Portal Act, 29 U.S.C.A. § 252. We think Mills' employment comes within the exception contained in subsection (a) (1) of § 2 of said Act, and that his activity was compensable by "an express provision of a written or non-written contract in effect at

the time of such activity, between such employee, his * * * collective-bargaining representative and his employer; * * *".

We set out in the margin a copy of paragraphs 4 and 5 of the Union agreement between California Shipbuilding Corporation, appellant herein, as employer, and the Metal Trades Department of the American Federation of Labor, representing the employees.[1] The lunch period provisions of the contract could have no application to the engineers since, during the time they were on shift, no "employees' time" could be found in which they could eat lunch. Section (c) of paragraph 5 obviously refers to those employees only who ate lunch on their own time. It is paragraph 4 of the contract which renders the Portal-to-Portal Act inoperative. That paragraph,

it will be noted, establishes the work week at 40 hours straight time and 8 hours overtime and further provides for the payment of overtime for all "work performed" in excess of 40 hours per week. Mills performed 11 hours work in excess of 40 hours within the meaning of the phrase "work performed." He was paid for 8 hours overtime only.

■ Appellant further argues that Thomas Mills was not employed in the production of goods for interstate commerce, which is a jurisdictional requirement under the Fair Labor Standards Act. Its contention was that the ships in the instant case were being constructed as weapons of war and for that reason did not constitute production of goods for commerce. See, Divins v. Hazeltine Electronics Corpora-

---

[1] Paragraphs 4 and 5 of the Union Agreement.

"4. Hours of Employment and Overtime.

"Forty (40) hours shall constitute a work week, eight (8) hours per day, five (5) days per week, Monday to Friday, inclusive, between the hours of 8 a.m. and 5 p.m., except that where, as to any locality or as to any plant of any employer, existing traffic conditions render it desirable to start the day shift at an earlier hour, such starting time may, with agreement of the employer affected and the local Metal Trades Council, be made earlier, but in no event earlier than seven (7) a.m. Overtime at the rate of one and one-half times the esblished hourly rate shall be paid for all work performed in excess of eight (8) hours per day and forty (40) hours per week. Since this agreement is based on the intent of six-day-per-week operation, all work performed on Saturdays shall be paid for at one and one-half times the established hourly rate. Overtime at double the established rate shall be paid for all work performed on Sundays and holidays. These provisions relative to overtime payment and for Saturday work shall be effective only during the period of the National Emergency; provided, however, that this establishment of this emergency rate shall not be used as a subterfuge to defeat the double-time provisions for Saturday work which would be in effect were it not for the National Emergency.

"The provision for time and one-half for overtime and on Saturdays established for the duration of the National Emergency shall automatically terminate

whenever the President of the United States shall proclaim that such National Emergency no longer exists; thereafter, all overtime shall be computed on a double-time basis.

"Holidays shall be as recognized by local Metal Trades Councils. When a recognized holiday falls on Sunday, the day observed by the Council shall be considered as a holiday and paid for as such.

"5. Shift Work.

"Shift work will be permitted in all classifications without restriction on the following basis:

"(a) The regular starting time of the day shift shall be eight (8) a.m., except that where, as to any locality or as to any plant of any employer, existing traffic conditions render it desirable to start the day shift at an earlier hour, such starting time may, with the agreement of the employer affected and the local Metal Trades Council, be made earlier, but in no event earlier than seven (7) a.m.

"(b) The regularly established starting time of the day shift shall be recognized as the beginning of the twenty-four (24) hour work day period. When irregular or broken shifts are worked, overtime rates shall apply before the regular starting time and after the regular quitting time of the shift on which the employee is regularly employed.

"(c) First or regular daylight shift: An eight and a half (8-1/2) hour period less thirty minutes for meals on the employee's time. Pay for a full shift shall be a sum equivalent to eight (8) times the regular hourly rate with no premium."

tion, D.C., 163 F.2d 100. We do not agree. The ships in question were troop transports and cargo vessels, built both to help carry on the war and the commerce of the United States. Subsequent to construction they were sent by the Maritime Commission to points outside the state of their origin. St. Johns River Shipbuilding Co. v. Adams, 5 Cir., 164 F.2d 1012; Divins v. Hazeltine Electronics Corporation, supra.

The judgment appealed from is modified so as to allow compensation to Mills' estate for overtime for three hours each week he worked on day shift and to deny recovery for time worked on graveyard shift. Under a stipulation filed in the case the number of weeks worked by Mills on the day shift was twenty-five; the hourly wage was $1.33, and overtime compensation was $1\frac{1}{2}$ times the regular compensation; hence, the amount due is $1.33 x $1\frac{1}{2}$ x 3 x 25= $149.63.

Appellee has cross appealed on the question of attorneys' fees. The trial court allowed $75. In view of the amount involved we consider the allowance ample. Attorneys' fees have been asked for work involved on this appeal. Because of the modification of the judgment in appellant's favor we deny the application for additional attorneys' fees.

GARRECHT, Circuit Judge, participated in the hearing of this appeal but died before an opinion could be prepared.