Thomas Dickehs, J.
Through the medium of this lawsuit, plaintiffs are endeavoring to invoke the enforcement of the Fair Labor Standards Act of 1938, as amended (U. S. Code, tit. 29, § 201 et seq.), relating to minimum wage for employees engaged in interstate commerce.
Originally posed for judicial determination, was this broad query: As defendant’s employees, did plaintiffs’ type of work encompass them within the protective measures of the act, so as to entitle them to protection thereunder?
However, this original field of inquiry has now been narrowed in plaintiffs’ memorandum of law after trial, to a single contention, to wit, that, in substance, plaintiffs took part in the interstate movement of merchandise by assisting in the purchase and in its receipt and transfer from the custody of the carrier to its final destination in the business establishment of defendant, where the transportation from one State to another came to an end.
In view of this change of front, any other substantial issue concerned with the act, becomes of small consequence in my coming to a decision. (Matter of Pessano, 269 App. Div. 337, affd. 296 N. Y. 564.)
The material facts before me are these: The collective whole of the duties of plaintiffs as employees hired by the week, consisted in receiving the wares purchased, in making sales to retail trade, and in keeping records. Although a minimum of 20% of the purchases was made from meat packers who conducted their principal business out of the State, these packers maintained local warehouses and made deliveries to defendant from these local warehouses. One truckload or two truckloads of meat were delivered weekly to defendant from points out of the State. As such, the deliveries comprised a small percentage of the total number of purchases. These out-of-State deliveries were unloaded by a “ city man” to the street at defendant’s - premises, and then taken by “ luggers ” to the storage box. Of the plaintiffs, Palladino, Maino, and sometimes Weinstein, assisted in getting the ‘ ‘ hand-trucks ’ ’ started up the ramp lead *1034 ing to the warehouse. Palladino also checked the meat delivered into the warehouse and kept records of the time put in by the ‘ ‘ luggers. ’ ’ Sales of this meat were made by salesmen to tradesmen, who came to the market to purchase. After purchase, the tradesmen Avould have the meat hauled to various parts of the metropolitan area for disposal in retail trade.
Upon these facts, this ease must stand or fall, for every ease is required to be decided upon its own state of facts. (Finnan v. Elmhurst Contr. Co., 199 Misc. 1016.)
After this trial Avithout a jury, I have, by a careful survey of these evidentiary facts, come to an adverse conclusion with respect to plaintiffs’ alleged claim that defendant was engaged in interstate commerce Avithin the orbit of the act. That defendant was so engaged, AAras the burden resting upon plaintiffs to prove. (Oberdorfer v. Rappoli Co., 207 Misc. 807.) That they failed, I find in the exercise of my prerogative as judge of the facts. (Watt v. Shattuck Co., 270 App. Div. 943.)
While it may be argued that a part of the total purchases were made of merchants conducting their business outside of this State, and therefore, these purchases were in commerce, nevertheless, this argument must be considered with the qualifying elements that the major number of these merchants had local warehouses, and procured, through the solicitation by salesmen, local orders, and, in fulfilment of these orders, made deliveries from local warehouses by means of local truckmen. In my opinion, such pattern of affairs, no matter how liberally looked upon, manifestly falls short of the favorable application of the act. A feAV legal principles on the subject, should demonstrate this.
True, interstate commerce is declared to mean the kind of commerce that effectuates the passing by sales and purchase of merchandise across State lines. (McComb v. Herlihy, 161 F. 2d 568; Oberdorfer v. Rappoli Co., supra.) But, in the instant case, as heretofore noted, the product, although originating in a sister State, was purchased within this State, and its delivery made locally from local Avarehouses. Such kind of transaction is not intended to be included in interstate commerce within the meaning of the act. (Higgins v. Carr Eros. Co., 317 U. S. 572; Kantar v. Garchell, 150 F. 2d 47.)
Furthermore, employment activities in their relative bearing on interstate commerce, are paramount for consideration. The test is not whether such activities affect, or indirectly relate to, interstate commerce, but whether they are actually in, or so closely related to, the movement of the commerce as to be part of it. The Avork of the employee is the decisive casting Aveight. *1035 Remote or incidental activities are not included within the length and breadth of the phrase “ in commerce.” (Tinyes v. J. Rich Steers, Inc., 189 Misc. 106; Baine v. J. L. Murphy, Inc., 70 N. Y. S. 2d 295. See, also, Kirschbaum Co. v. Walling, 316 U. S. 517.) Then again, such part in interstate movement, must be substantial. (Divins v. Hazeltine Electronics Corp., 163 F. 2d 100; Watt v. Shattuck Co., 270 App. Div. 943, supra.)
To save unnecessary repetition, a glance at the summarized details of plaintiffs’ alleged interstate activities, narrated before, is, to my mind, convincing that the assistance they (Palladino, Maine and Weinstein) lent, was merely service incidental to their main duties, and was so trival and so remote, in the circumstances, that its connection with commerce may be regarded as nil. (See Tinyes v. J. Rich Steers, Inc., supra.)
The status of Wiesner, the bookkeeper, remains to be settled. He handled the account books, maintained the general records, and paid the bills. Do these duties by themselves bring him within the protection of the act? I think not. As already stated, the business, being primarily local in character, supplying local retail trade, and getting its principal wares from local warehouses, although a number of them were owned by out-of-State companies, cannot be said to be interstate business, and therefore, cannot be considered as legal reason for crediting Wiesner with having been in contact with interstate commerce, so as to bring him within the coverage of the act; and this, despite the one weekly delivery, or the two weekly deliveries made by the out-of-State companies. (Higgins v. Carr Bros. Co., 317 U. S. 572, supra.)
It follows that I have no alternative but to render judgment in favor of defendant. Findings of fact and conclusions of law were waived.
Any motion made in the course of the trial, now remaining undisposed of, is decided in conformance with this opinion.
Judgment for defendant.