Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Plaintiff, Appellant,

v.

NOLLA, GALIB & CIA., Defendant, Appellee.

Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Plaintiff, Appellant,

v.

FIVE BORO CONSTRUCTION CORPORATION, Defendant, Appellee.

Nos. 5741, 5747.

United States Court of Appeals
First Circuit.

June 15, 1961.

Beate Bloch, Attorney, Washington, D. C., with whom Harold C. Nystrom, Acting Sol. of Labor, Bessie Margolin, Asst. Sol., Washington, D. C., and Kenneth P. Montgomery, Regional Attorney, San Juan, P. R., were on briefs, for appellant in each case.

Jorge Souss, San Juan, P. R., with whom Blanco Lugo & Souss, San Juan, P. R., was on brief, for appellee in Case No. 5741.

Anthony J. Siminerio, New York City, with whom Joseph N. Friedman, New York City, was on brief, for appellee in Case No. 5747.

Before MAGRUDER,* HARTIGAN and ALDRICH, Circuit Judges.

MAGRUDER, Circuit Judge.

These two cases, which involve essentially the same point, were argued together on appeal and may be disposed of by a single opinion. In each, a complaint was filed by the Secretary of Labor requesting that the defendant be enjoined from violating the minimum wage and overtime provisions of the Fair Labor Standards Act of 1938. 29 U.S.C.A. § 201 et seq. The United States District Court for the District of Puerto Rico entered judgments dismissing the two complaints, on the ground that the defendants were not engaged in commerce or the production of goods for commerce within the meaning of the Act. Appeals from these two judgments were taken by the Secretary of Labor.

We think that the district court was too much impressed with cases like Divins v. Hazeltine Electronics Corp., 2 Cir., 1947, 163 F.2d 100, 102, in which the court, construing the phrase "engaged in commerce," introduced a distinction between instrumentalities held by the government exclusively for war purposes and those in commercial use, so as to hold the Act inapplicable to employees engaged in repairing and servicing radio and radar equipment on United States war vessels. It seems to us that this distinction was in effect disapproved in Powell v. United States Cartridge Co., 1950, 339 U.S. 497, 70 S.Ct. 755, 759, 94 L.Ed. 1017.

Admittedly the Congress cannot by definition enlarge the meaning of the "commerce" clause of the Constitution, which remains the statutory basis of the Fair Labor Standards Act. It is true that "commerce" is defined in the Act as meaning "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C.A. § 203(b). The employees in the Powell case were engaged in the manufacture of munitions, which were destined to be shipped abroad and consumed by the United States, not sold in any commercial transaction. This was held to be "transportation," and thus "commerce," despite the lack of a commercial element. We cannot see that it makes any difference that the Powell case considered the phrase "the production of goods for commerce" in the statute rather than "engaged in commerce." In effect that case overruled Divins v. Hazeltine Electronics Corp., supra, 163 F.2d 100.

In our Circuit, Nieves v. Standard Dredging Corp., 1 Cir., 1945, 152 F.2d 719, 720, had to do with employees engaged in constructing a graving dock as part of Roosevelt Roads Naval Base in Puerto Rico. If the distinction had been sound between war and commercial purposes, we would have had an easy way to deny coverage in that case; instead we held that the employees were not engaged

---

* Sitting by designation.

"in commerce" because they were not doing work "so closely related to the movement of the commerce as to be a part of it," as was stated in McLeod v. Threlkeld, 1943, 319 U.S. 491, 497, 63 S.Ct. 1248, 1251, 87 L.Ed. 1538.

We agree with the decision of the Fifth Circuit in Mitchell v. Empire Gas Engineering Co., 1958, 256 F.2d 781, 784–785, that if the employees' activities otherwise involve them in interstate commerce, the Fair Labor Standards Act applies to them even though the action is carried on by the government.

In No. 5741, the employees concerned were building hangar facilities, a fire pumping station, and a water storage tank at an existing United States Naval Air Station. In No. 5747, the employees were constructing a transmitter building, a communications center building, a receiver building, three power plants, all support buildings and utilities which, when finished, were to take their place as a communications relay center of the Army Communications Administrative Network. We do not think it is material, but the stipulated facts state that the facilities in both cases related solely to the government's war effort and so far as appears were never to be used for commercial purposes.

In No. 5741, it is stipulated in part that: "1. The hangar facilities are essential to the functioning of the aviation facilities of the base. 2. Military air transports occasionally bring in to Puerto Rico from the mainland, marine support personnel to Vieques for maneuvers. Since there are no adequate aircraft facilities on Vieques, the planes stop at Roosevelt Roads for refueling and crew rest prior to returning to the U.S." The recitations in the stipulation do not contain so much detail as might be desired, but we cannot believe that the operation of the air base did not include fairly extensive shuttling of planes back and forth between the mainland and Puerto Rico.

The stipulation and the testimony of one witness in No. 5747 give a complete presentation of the operations of the communications center which, when completed, will engage in world-wide reception and transmission of messages. The employees were engaged in constructing the buildings, not in installing the radio equipment. No doubt, the radio relay station which they were building was admittedly "new construction"; but the distinction between new construction and repairs has been expressly rejected by the Supreme Court as a determinative touchstone whereby to decide the coverage of the Act. See Mitchell v. C. W. Vollmer & Co., Inc., 1955, 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196, and Mitchell v. H. B. Zachry Co., 1960, 362 U.S. 310, 313, 80 S.Ct. 739, 4 L.Ed.2d 753. Within the meaning of McLeod v. Threlkeld, supra, 319 U.S. 491, 497, 63 S.Ct. 1248, 87 L.Ed. 1538, it seems to us that the labor of those employed in construction of the facilities at the communications relay station was certainly as closely related to commerce, if not more so, than that of the designers and draftsmen in Mitchell v. Lublin, McGaughy & Associates, 1959, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243.

There were two contracts being performed by the defendant in No. 5747. But there is no real distinction between the activities of the employees under contract No. 1, calling for the construction of the technical buildings and the power plant, and contract No. 2, calling for the erection of support buildings and utilities. According to the testimony below, all these facilities were an "integral part" of the whole project. The construction work here should be regarded as an entirety, and not broken down into its component parts. Archer v. Brown & Root, Inc., 5 Cir., 1957, 241 F.2d 663. See Bennett v. V. P. Loftis Co., 4 Cir., 1948, 167 F.2d 286, 288.

Finally, it has been contended that the injunction should not be issued in No. 5747 because the work called for under the contracts has been completed. This court is not in a position to determine whether there is any "reasonable expectation that the wrong will be re-

peated," see United States v. W. T. Grant Co., 1953, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303, quoting from United States v. Aluminum Co. of America, 2 Cir., 1945, 148 F.2d 416, 448; but the parties will be free to make that contention on remand.

The judgments of the District Court will be vacated and the cases remanded to that Court for further proceedings not inconsistent with this opinion.