José Ángel Pamblanco et al., Plaintiffs and Appellants, *v.* Union Carbide Caribe, Inc., Defendant and Appellee.

No. R-63-280.     Decided June 26, 1964.

*Julio Alvarado Ginorio* for appellants. *José Guillermo Vivas* and *Jorge L. P. Valdivieso, Jr.,* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

## I

### *The Legislation*

It was not until the enactment of Act No. 121 of June 27, 1961 (Sess. Laws, p. 261), which amended § 14 of Act No. 379 of May 15, 1948 (Sess. Laws, p. 1254), that the lawmaker provided a civil sanction for the evasion by the employers of the obligation to grant to the laborers a period during working hours for taking food. Both under the original wording of § 14 and under its forerunner—§ 3 of Act No. 49 of August 7, 1935 (Sp. Sess. Laws, p. 538)— the employer was merely required to affix a printed notice stating the number of hours of work required daily of the employees during each day of the week, the time for beginning and ending work, and the time when the period for taking their meals began and ended, not less than one hour. Act No. 379 also granted authorization to reduce the time fixed for taking food, for the convenience of the employee, and, by stipulation to that effect of the latter and his employer, with the approval of the Secretary of Labor.

In the report submitted by the Committee on Labor of the Senate of Puerto Rico to that legislative body, XIV Journal of Proceedings 784–85 (1961), it is said that some employers are compelling their laborers to work part of their lunch time, and in order to avert this undesirable situation a "civil penalty" was recommended consisting in providing payment at double rate for the period for taking food during which the employees were required to work.[1]

---

[1] From the report of the House Labor Committee, XIV Journal of Proceedings 1553 (1961), in connection with S.B. 133, which became Act

In consonance with this purpose, there was added a proviso to § 14 which reads: ". . . every employer who employs or permits an employee to work during the period fixed for taking food will be obliged to pay for said period or fraction thereof at a wage rate equal to double the rate agreed upon for regular hours."

Act No. 88 of June 22, 1962 (Sess. Laws, p. 232) again amended § 14, 29 L.P.R.A. § 283 (Supp. 1963, pp. 193–94), for the purpose of (1) clarifying certain points respecting the stipulation permitted in order to agree on a period of less than one hour, and (2) stipulating a norm with regard to the duration of such stipulation and the manner of rendering same without effect. To that effect, it was provided that (a) if the employees are unionized, the stipulation could be effected through collective bargaining or written agreement between the union and the employer, there being no need for the individual consent of the employees represented by the union or for the approval of the Secretary of Labor, the reduction in such cases being effective for the duration of the agreement, or as provided in the collective bargaining agreement; (b) where the stipulation is agreed between the employer and the individual members, it shall be valid indefinitively and none of the parties may withdraw unilaterally its consent to the stipulation until one year after such stipulation became effective.

---

No. 121 of 1961, we copy:

"As the Act now stands, if the employer obligates his employees to work during the period for taking food, he may compensate for such time at the regular rate. The only remedy available to the workers or to the Secretary of Labor to prevent violation of this provision would be to file an injunction in order that the courts may compel the employer to comply with this provision of the Act, or to denounce the employer for violation of the penal clause of the statute.

"The experience in the labor field, as stated by Mr. Janer, who appeared before the Committee on behalf of the Secretary of Labor, shows that it is better to impose civil penalties consisting in an increase in the wage rate, or in an additional compensation in order to discourage violations of the labor legislation."

It was further clarified that in these cases of reduction of the period for taking food, the employer will be obliged to pay at double the wage rate only if he employed or permitted an employee to work during such reduced period fixed for taking food.[2]

## II

### *The Facts*

Union Carbide Caribe, Inc., is an enterprise engaged in the production of chemical substances. Complainants worked as operators in a continuous process, their main work consisting in observing certain control instruments and occasionally opening and adjusting certain valves. Owing to the continuous nature of the operation of the industry, there were established three rotating shifts of eight hours each, from 7:30 a.m. to 3:30 p.m., from 3:30 p.m. to 11:30 p.m., and from 11:30 p.m. to 7:30 a.m., which were denominated "day," "night," and "midnight" shifts. Furthermore, other employees—we presume in different functions—worked during one shift called "regular" covering the period from 7:30 a.m. to 11:30 a.m. and from 12:00 m. to 4:00 p.m.

On different dates prior to the enactment of Act No. 121 of 1961, *supra*, the complainants, with the exception of Guillermo Rosa, signed a stipulation with the enterprise which was approved by the Secretary of Labor and which read as follows:

"It is hereby agreed between Union Carbide Caribe, Inc., and [space for inserting the name of the employee] that the latter, an employee of Union Carbide, Inc., shall be entitled to a period for taking food of one-half hour instead of the one-hour period to which he is entitled under the law. This is the wish of the employee, since he does not have sufficient time to go home for lunch, and the reduction of the period for taking

---

[2] The original bill, H.B. 508, did not contain this explanatory provision. Its inclusion was recommended in the report of May 19, 1962, of the House Labor Committee.

food enables him to complete his work half an hour ahead of time.

"It is further agreed that whenever he works in a rotating shift the work shall not be interrupted for taking food, since such work consists in observing and supervising machinery and devices, which normally gives him sufficient time during any hour to have lunch. Thus, by taking food without taking time for a lunch period which is not paid to him, the employee completes his daily task in eight consecutive hours."

According to the trial court's determination, complainants were given an opportunity to take food within the 8-hour working period, although no such period was specifically fixed. They were compensated at the regular rate for the time so worked. This does not interfere at all with the efficient performance of their duties. After Act No. 121 *supra* went into effect, another stipulation was made which was approved by the Secretary of Labor,[3] reducing to one quarter of an hour the period for taking food, which read as follows:

*"Agreement on Lunch Period for Employees Assigned to Rotating Work Shifts.*

---

[3] The name of each complainant, the date of the stipulation reducing the period for taking food, and the date of the approval of the latter by the Secretary of Labor are as follows:

| Name of Complainant | Date of Stipulation | Date of Approval |
| --- | --- | --- |
| Iván Torres | Nov. 26, 1961 | Dec. 14, 1961 |
| Domingo Quiñones | Dec. 28, 1961 | Jan. 9, 1962 |
| Efraín Loyola Torres | Dec. 31, 1961 | Jan. 23, 1962 |
| José A. Pamblanco | Jan. 11, 1962 | Jan. 23, 1962 |
| Víctor M. Mari | Nov. 26, 1961 | Dec. 14, 1961 |
| Roberto Pérez | Jan. 11, 1962 | Jan. 23, 1962 |
| Ignacio Quijano | Jan. 11, 1962 | Jan. 23, 1962 |
| Miguel A. Reyes | Jan. 11, 1962 | Jan. 23, 1962 |
| Eduardo Castellar Pacheco | Jan. 11, 1962 | Jan. 23, 1962 |
| Enrique Maldonado | Jan. 11, 1962 | Jan. 23, 1962 |
| Meraldo Duperón Sierra | Dec. 28, 1961 | Jan. 9, 1962 |
| José Ramón Ruiz | Dec. 28, 1961 | Jan. 9, 1962 |
| César L. Irizarry | Jan. 11, 1962 | Jan. 23, 1962 |
| Sabato Carbone, Jr. | Nov. 26, 1961 | Dec. 14, 1961 |

"It is hereby agreed, by and between Union Carbide Caribe, Inc., and myself [space for name of employee], an employee of Union Carbide Caribe, Inc., assigned to a rotating work shift, that I shall have a compensated 15-minute lunch period for each day of work. Such lunch period shall be paid to me at the regular wage rate. This arrangement enables me to complete a full day's work in eight (8) hours.

| Shift | Working Hours | 15-Minute Lunch Period |
|---|---|---|
| Day | 7:30 a.m. to 3:30 p.m. | From 10:30 a.m. to 12:30 p.m. depending on my relief. |
| Afternoon | 3:30 p.m. to 11:30 p.m. | From 6:30 p.m. to 8:30 p.m. depending on my relief. |
| Midnight | 11:30 p.m. to 7:30 a.m. | From 2:30 a.m. to 4:30 a.m. depending on my relief." |

It should be noted that the effect of this stipulation is that the employees shall be paid the wage corresponding to eight hours of work for work consisting of only 7-3/4 hours.[4]

### III

On April 22, 1963, José Ángel Pamblanco and 14 other employees of Union Carbide Caribe, Inc., resorted to the court by means of a complaint alleging that from June 27[5] until the day of approval of a stipulation made between

---

[4] In the letter approving the first stipulation submitted to him, the Secretary stated that the administrative norm was not to approve reductions of the period for taking food to less than one-half hour, except where special circumstances so warranted. He added that in the case submitted to him for consideration the following factors were present: (1) the nature of the operations and the manner in which they were carried out, which require that the machinery be not stopped and which involve safety problems requiring continuous observation; (2) the separation in the premises where the employees perform work which renders difficult the changes in the hours of the different shifts; and (3) the willingness of the enterprise to pay for the period proposed for taking food as part of the 8-hour working period.

[5] They refer to June 27, 1961, the effective date of Act No. 121.

complainants and the enterprise in question[6] they rendered services during shifts of eight consecutive hours without receiving compensation for the hour for taking food at double the wage rate for regular hours. After proper proceedings were had, the case went to trial. Judgment was rendered dismissing the complaint.

The basic determination made by the trial court was to the effect that "complainants worked for Union Carbide, Inc., during different rotating shifts since long before the period covered by the claim. All of them worked during regular 8-hour shifts and were paid at the regular wage rate, including the time used for taking food." It stated further that according to the evidence, the employees used approximately 15 minutes for taking food. And in the conclusions of law it asserted that "there is no question that the original agreements [it refers to the stipulations dated prior to Act No. 121] . . . complied with the norms stipulated by that Act [§ 14 of Act No. 379, according to its original wording]."

It is well to point out that the trial court apparently was confused as to the nature of the action exercised. There is no other explanation for its continuous reference to compensation for the hours worked in excess of eight hours a day as extra time. This is not a claim for services rendered in excess of the legal working period. The particularity presented is precisely that, notwithstanding each complainant only worked eight hours a day—and in the case in which he worked in excess he was compensated according to the applicable law—one of those hours should be compensated at double rate, not as an extra hour, but by way of civil

---

[6] It refers to the second stipulation which is copied in the text of this opinion. Although at a pretrial conference the parties stipulated that the date of the stipulation was January 23, 1962, the specific date of the *approval* thereof by the Secretary of Labor as to each of the claimants appears from the documentary evidence admitted. See n. 3 above.

penalty which has been provided whenever work is performed during the hour for taking food.[7] Here is an example to illustrate the question. A laborer who works during nine consecutive hours would be entitled to collect for the ninth hour at double rate, or at time and a half if the activity is covered by federal legislation, and another hour at double rate which would correspond to the hour for taking food.

■ ■ Returning to the case under consideration, it is evident that the trial court erred in dismissing the complaint. As we have seen, complainants worked eight consecutive hours a day in the rotating shifts. They did not have an hour or fraction thereof for taking food. In other words, they took food at any time of their regular working period. This obligation of permitting food to be taken presupposes an interruption in the rendering of services and that the employee may use this time freely without having during the same to give attention, even if it is minimum, to the duties of his job. *Cf. Glenn L. Martin Nebraska Co.* v. *Culkin,* 197 F.2d 981 (8th Cir. 1952); *F. W. Stock & Sons* v. *Thompson,* 194 F.2d 493 (6th Cir. 1952); *Joshua Hendy Corporation* v. *Mills,* 169 F.2d 898 (9th Cir. 1948); *Lindell* v. *General Electric Co.,* 267 P.2d 709 (Wash. 1954). That is not complainants' situation as revealed by the findings of fact and the documentary evidence. Nor may the defendant rest on the stipulations made prior to June 27, 1961, which far from favoring it rather buttress the conclusion which we have reached, since it appears clearly that (a) in the case of employees in rotating shifts, they worked eight consecutive hours uninterruptedly; and (b) the period for taking food was established for the employees who worked

---

[7] If the intention of the lawmaker had been to consider this hour for taking food as an extra hour, it would have been easy for him to include it in the enumeration of § 4 of Act No. 379, 29 L.P.R.A. § 273, as he did, among others, in the case of hours worked during the day of rest or on those days in which the establishment where he renders services should remain closed to the public.

a "regular" shift from 7:30 a.m. to 11:30 a.m., who interrupted the work for one-half hour from 11:30 a.m. to 12:00 m., when they resumed work until 4:00 p.m. The stipulations read as follows: "It is further agreed that whenever he works in a rotating shift, *the work shall not be interrupted in order to take food,*" adding "Thus, by taking food *without taking time for a lunch period* which is not paid to him, the employee completes his daily task in eight consecutive hours."

That is why after the enactment of Act No. 121, by reason of the impossibility to interrupt or suspend work even for brief moments, and in a genuine effort to comply with the provisions thereof—it should be admitted that the enterprise at all times has been anxious and mindful of and willing to comply with the Act—that defendant made a second stipulation whereby, without changing the duration of each rotating shift and preserving its uniformity of eight hours, it reduces the period for taking food to only one quarter of an hour "when I am relieved."

■ ■ The trial court attributes unusual importance to the fact that the first stipulation was approved by the Secretary of Labor. In fact, that officer approved the plan submitted by the company establishing a regular shift allowing one-half hour to take food and the rotating shifts in which no such period was provided. Regarding the latter point, in the corresponding letter it was said that the manner of performing the work "allowed 'sufficient time' to take food." However, as may be noted, even under the original § 14 the Secretary only had power to fix a period of less than one hour, but never to eliminate it completely. Defendant could not rely on this administrative action which exceeded the authorization conferred by law. *Cf. Santesson* v. *Superior Court; Fuentes, Int.,* 82 P.R.R. 541 (1961); *Descartes, Treas.* v. *Tax Court,* 71 P.R.R. 440 (1950).

■ Lastly, there remains to determine defendant's liability. The court determined that the employees only used a quarter of an hour to take food during the period covered by the claim. At first blush it would seem that this is the period which should be paid at double rate. However, since on that date there was no valid stipulation fixing a shorter period for the employees who worked in the rotating shifts —it should be recalled that the first stipulation did not reduce the period for taking food but rather eliminated it completely—[8] the enterprise is bound to pay for the full hour until the date of approval of the second stipulation.[9]

The judgment will be modified as to all claimants, with the exception of Guillermo Rosa, and the case will be remanded for judgment in favor of said complainants pursuant to the terms of this opinion.

Mr. Chief Justice Negrón Fernández dissented.

---

[8] It is possible that the convenience of the employees may warrant elimination, with the consent of the Secretary of Labor, of the period for taking food whenever the nature of the operations does not interfere with the health and welfare of the laborers, which is what the measure actually seeks to protect. The decision of that question is clearly for the Legislative Assembly.

[9] Since the defendant already paid for this hour at the regular rate, the computation of the amount due shall comprise only the number of hours at the regular rate. Whether in the case of a "civil penalty" it is proper to order the payment of an equal amount by way of "additional compensation" pursuant to § 30 of the Minimum Wage Act, 29 L.P.R.A. § 246(b) (Supp. 1963, pp. 166–67), cf. § 25 of Act No. 8 of April 1941, 29 L.P.R.A. § 236, as construed in *Tulier* v. *Land Authority*, 70 P.R.R. 249 (1949), and *Acosta* v. *Floor Coverings Co.*, 78 P.R.R. 467 (1955), *quaere*.